State ex rel. Consolidated Stone Co. v. Houser, 125 Wis. 256.

THE STATE EX REL. CONSOLIDATED STONE COMPANY and
another, Respondents, vs. HOUSER, Secretary of State,
Appellant.

*April 10—June 23, 1905.*

*Constitutional law: Statutes: Appropriation for private purpose.*

Ch. 337, Laws of 1903, appropriated a sum of money to relators,
who, as subcontractors, furnished material to the principal con-
tractor engaged in building a state institution. The principal
contractor fully performed his contract and was paid in full
for all the work and materials covered thereby, but failed, to
the extent of the appropriation, to pay relators, and became
bankrupt. *Held:*

(1) Ch. 337 did not come within the letter of the prohibition
of sec. 26, art. IV, Const.

(2) The appropriations made by said ch. 337 were for purely
private purposes and hence unconstitutional and void.

[(3) Whether relators were public officers, *agents*, servants,
or contractors of the state, not decided.]

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This is an appeal from a judgment granting a peremptory
writ of *mandamus* compelling the defendant, as secretary of
state, to issue his warrant to the relators separately for the
respective amounts appropriated to them respectively by ch.
337, Laws of 1903. The petition for the writ alleged, in ef-
fect, that the act appropriated to the relator the *Consolidated
Stone Company* $3,503.52, and to the relator *David Stephens*
$1,563, making altogether $5,066.52; that the defendant,
acting upon the advice of the attorney general, had refused
to audit and allow the said claims, or either of them, or is-
sue warrants therefor, as he was in duty bound to do under
said chapter; that the attorney general had given his opinion
in writing that said act was unconstitutional and void; that
the petitioners had furnished and delivered stone, crushed
stone, and brick for the construction of the State Historical
Library building at Madison; that such construction was

done under contract between the state and Thomas R. Bentley, who received from the state the pay for such stone, crushed stone, and brick, but the petitioners have never been paid for such stone, crushed stone, and brick, nor any part thereof; that Thomas R. Bentley went through insolvency under the laws of this state and turned over all his property to his assignee; that the petitioners presented and proved up their claims against his estate in such proceedings, but only received thereon the amounts hereinafter stated; that the respective amounts so appropriated were the amounts remaining due to them after the application thereon of such dividends; that Thomas R. Bentley was discharged from his debts in such insolvency proceedings; that said chapter in no way increased or diminished the compensation of said Bentley as public contractor or otherwise, and he is in no way interested in said appropriation; that the petitioners have no remedy against Bentley; that the petitioners, in furnishing and delivering such stone, crushed stone, and brick, were acting as subcontractors under Bentley; that such stone, crushed stone, and brick were actually used in the erection and construction of said building, and now constitute a part thereof; that the petitioners must lose the entire amount and value of such materials and get no pay for the same, or any part thereof, unless the legislature had power to make said appropriations; that in making such public contract with Bentley for such construction the state exacted no bond or security from him for the payment of claims of subcontractors and others who furnished materials or performed labor in said building; that such materials were so furnished and delivered between July 1, 1896, and January 1, 1897; that the petitioners respectively presented a bill to the legislature of 1901 for said materials, which was disallowed by such legislature prior to May 1, 1901; that in the appropriations made by said chapter interest was included, to wit, on the *Stephens* claim, $372.24, and on the claim of the *Consolidated Stone Company*

$1,019.34; that the assignee in the insolvency proceedings on January 10, 1900, paid to *Stephens,* as dividend on his claim, $365.92, and to the stone company, as dividend on its claim, $828.02, and that only one dividend was ever made in said insolvency proceedings. Upon such petition an alternative writ of *mandamus* was issued against the defendant June 23, 1903. On the day said alternative writ was made returnable the attorney general moved to quash the writ on the grounds (1) that the petition does not state facts sufficient to constitute a cause of action or to show that the relators were entitled to the writ; (2) that it appears on the face of the petition that the claims of the relators were not filed within six years after they accrued. December 8, 1904, the motion to quash was denied by the court with $10 costs of motion, and with leave to the defendant to serve his answer within twenty days. Thereupon, and on December 8, 1904, the attorney general, in writing, duly filed, waived his right to serve and file an answer therein, and thereby elected to stand upon his motion to quash the alternative writ. Thereupon, and upon motion of the attorneys for the relators, and on December 9, 1904, it was "ordered that judgment be entered granting petitioners the peremptory writ of *mandamus,* and that said writ issue forthwith upon the entry of said judgment directing and commanding said defendant, *Walter L. Houser,* secretary of state of the state of Wisconsin, upon the pain and peril that shall fall thereon for refusal, that he audit and allow said claims and issue his warrant to said petitioners separately for the respective amounts appropriated to each in ch. 337, Laws of 1903, as prayed for in said petition; it is further ordered that petitioners have and recover by said judgment their costs and disbursements in this action;" and ordered judgment to be entered therein accordingly. From the judgment entered thereon accordingly the defendant appeals.

The *Attorney General,* for the appellant.

For the respondents there was a brief by *Chynoweth &
Mason,* and oral argument by *H. W. Chynoweth.*

CASSODAY, C. J.   1. The question for determination is
whether the legislature had power to make the appropria-
tions mentioned in the chapter of the statute cited (ch. 337,
Laws of 1903).   The attorney general contends that the act
is void upon either of two grounds.   The first is that it is
in violation of the provision of the constitution which de-
clares that "the legislature shall never grant any extra com-
pensation to any public officer, agent, servant, or contractor,
after the services shall have been rendered or the contract
entered into."   Sec. 26, art. IV, Const.   The case made cer-
tainly does not come within the letter of such prohibition,
since neither of the relators was the "public officer, *agent,
servant,* or contractor" of the state.   Mr. Bentley was the
only person entering into any contract with the state, or who
placed himself under any obligation to the state, or who had
any contract relation with the state.   The relators were each
subcontractors under Mr. Bentley, and to him alone were
they answerable.   Counsel for the relators state in their
brief that "the subcontractor was *agent* under the contractor
to do work for the state."   If this were true there would be
much force in the claim of the attorney general that the ap-
propriation was expressly prohibited by the provision of the
constitution quoted, or at least that it was within the spirit
of that prohibition and the mischief thereby sought to be
prevented.   But the view we have taken of this case makes
it unnecessary to determine that question.

2. The second ground upon which the attorney general
claims that the appropriations are unconstitutional is that
they were not either of them made for a public purpose, but
that each was made for a private purpose.   It must be con-

ceded that the State Historical Library building, in the erection and construction of which the materials furnished and delivered by the relators were actually used, was a public institution. It appears that the state entered into a contract with Mr. Bentley for the erection and construction of a portion of that building. That contract required him to furnish the materials and perform the labor. In making that contract the state did not require Mr. Bentley to give any bond or security for the payment of claims of subcontractors or others who furnished materials for or performed labor in or upon the building. It is conceded that Mr. Bentley fully performed his contract and that the state paid him in full for all the work and materials covered by his contract. The state was only concerned in having its contract with Mr. Bentley performed, and when it was so performed and paid for the public purpose of that contract was satisfied. The state made no contract with the relators or either of them, and had no dealings with them or either of them. It was no concern of the state, nor of the people of the state, nor of the public, whether Mr. Bentley procured such stone, crushed stone, and brick from the relators or some one else; nor whether he paid for them on delivery or obtained them on credit. In no event was the state liable for such material so furnished by the relators. This is conceded. The contracts for such materials between Mr. Bentley and the relators, respectively, were personal and private contracts. Stripped of all verbiage, the act in question was merely an attempt to donate from the public treasury the amounts therein mentioned to the private persons therein named in payment of Mr. Bentley's private indebtedness to them. Its only purpose was to pay the indebtedness of one private person who had failed in business to the other private persons therein named. In other words, the purpose of the act was to appropriate the public moneys of the state to the payment of private debts. The question recurs

whether the legislature had the power to make such contributions from the public treasury to pay such private debts. Certainly the power of the legislature to appropriate moneys out of the public treasury is not unlimited. "It can only be so appropriated 'by law,' and that means a valid law." Sec. 2, art. VIII, Const.; *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, 573, 88 N. W. 596, 90 N. W. 1067. "No construction is permissible which defeats the obvious purpose and object of constitutional restrictions." Id. In the case last cited it is said by way of quotation from standard text-writers:

"The power of the government to embark in enterprises of public charity and benefit can only be limited by the restrictions upon the power of taxation, and to that extent alone can these subjects in American law be said to fall within the police power of the state. . . . It is implied in all definitions of taxation that taxes can be levied for public purposes only. . . . It may be regarded as a settled doctrine of American law that no tax can be authorized by the legislature for any purpose which is essentially private; or, to state the proposition in other words, for any but a public purpose." Id.

It was held by this court forty years ago, in the language of Chief Justice DIXON, that:

"The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot, in the form of a tax, take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well-being of the community required to contribute." *Brodhead v. Milwaukee,* 19 Wis. 624, 652.

In a later case Chief Justice RYAN said: "Taxation is the absolute conversion of private property to public use; and its validity rests on the use." *Att'y Gen. v. Eau Claire,* 37 Wis. 400, 438. But it is unnecessary to cite authorities to propo-

sitions which have repeatedly been sanctioned by this court, and from which this court has recently and repeatedly drawn the conclusion that no appropriation can be made and no tax can be levied for a mere private purpose. *Wis. Keeley Inst. Co. v. Milwaukee Co.* 95 Wis. 153, 159–161, 70 N. W. 68 and cases there cited, particularly *Lowell v. Boston,* 111 Mass. 454; *State ex rel. Griffith v. Osawkee,* 14 Kan. 418; *Wis. Ind. School v. Clark Co.* 103 Wis. 651, 666–668, 79 N. W. 422.; *Putney Bros. Co. v. Milwaukee Co.* 108 Wis. 554, 84 N. W. 822; *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, 573–578, 88 N. W. 596, 90 N. W. 1067, and cases there cited; *State ex rel. Garrett v. Froehlich,* 118 Wis. 129, 134–144, 94 N. W. 50, and cases there cited. As already indicated, the appropriations in question were purely for private purposes and hence were unconstitutional and void.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the relation.