[Nos. 15414, 15415.    Department One.    August 6, 1919.]

THE STATE OF WASHINGTON, *on the Relation of Hugh* · *Govan, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*

THE STATE OF WASHINGTON, *on the Relation of Arvid Rydstrom, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

CONSTITUTIONAL LAW (70)—JUDICIAL POWERS—ENCROACHMENT ON' LEGISLATION—RELIEF BILLS—VALIDITY.    The courts will not inquire into the constitutionality of Laws 1919, p. 299, making an appropriation for the relief of certain persons for services performed and material furnished to the state, although it is alleged that the act grants extra compensation for the performance of services under state contracts after performance of the contracts, in violation of Const., art. 2, § 25, and although fraud is alleged; since the courts cannot inquire into the motives of the legislature, or question the facts or impeach the judgment of a coordinate branch of the government.       *⁄*

Application filed in the supreme court June 13, 1919, for a writ of mandamus to compel the state auditor to issue warrants to the relators.    Granted.

*T. F. Trumbull,* for relator Govan.

*Sullivan & Christian,* for relator Rydstrom.

*The Attorney General,* and *John H. Dunbar,* for respondent.

MITCHELL, J.—These two cases were presented together to the court, and are thus considered in deciding them.    Each of the petitions alleges:

[1]Reported in 183 Pac. 115.

"That at the 1919 session of the legislature of the state of Washington, an act was duly enacted by the legislature and approved by the Governor March 15, 1919, being chapter 128 of the Laws of 1919, page 299, a copy of which act is as follows:

" 'An act making appropriations for the relief of Arvid Rydstrom and David Govan for services performed and material furnished.

" 'Be it enacted by the Legislature of the State of Washington:

" 'Section 1.   That the sum of twenty-seven thousand three hundred nineteen dollars and fifty-eight cents ($27,319.58) is hereby appropriated from the public highway fund for the relief of Arvid Rydstrom for services performed and materials furnished the state, for which he has not been paid, and the state auditor is hereby authorized and directed to draw his warrants upon the state treasury in favor of said Arvid Rydstrom in the said amount.

" 'Sec. 2.   That the sum of twelve thousand dollars ($12,000) is hereby appropriated from the public highway fund for the relief of David Govan for services performed and materials furnished the state, for which he has not been paid, and the state auditor is hereby authorized and directed to draw his warrants upon the state treasury in favor of said David Govan in said amount.' "

That in one case the beneficiary named in the act, and in the other case the legal representative of the beneficiary named in the act, made application on June 13, 1919, to respondent, as state auditor, for a warrant drawn upon the state treasurer in the amount due under the terms of the law; that respondent refused in each case to draw such a warrant, giving as a reason his doubt as to the validity of the law; and that relator has no plain, speedy or adequate remedy in the ordinary course of the law.   Each prays for a writ of mandamus to compel the issuance of the warrant.

In the Govan case, respondent has filed an answer

wherein he alleged, substantially, as follows: That, in October, 1917, Govan entered into a contract with the state for clearing, grading, draining and surfacing a portion of state road No. 21, in accordance with the plans, stipulations and specifications which were made a part of the contract; that, among other things, the contract provided:

"Payments shall be made for work and labor performed and materials furnished under this contract according to the schedule of rates and prices hereto attached and made a part hereof, and in no other manner whatsoever. The state highway commissioner shall determine the unit quantities and proper classifications of all work done and materials furnished under the provisions of this agreement, and his determination thereof shall be final and conclusive and binding upon the contractor."

That, after entering upon the performance of the contract, partial payments were made as provided therein; that, about August 16, 1918, Govan made an assignment of all sums due or to become due under the contract, to the Maryland Casualty Company; that the contract was completed in October, 1918, and a final estimate of all sums due, to wit, eight thousand five hundred five dollars and twenty-three cents ($8,505.-23), was made and approved by Govan; that the final estimate was approved by the highway commissioner on February 21, 1919, and in April, 1919, state warrants therefor were drawn by respondent, payable and delivered to the assignee, Maryland Casualty Company, who accepted the same in full and complete payment of all sums due Govan and the casualty company by reason of the assignment referred to, and that the warrants were paid by the state treasurer; that said Govan, his executors, etc., have been paid in full for all services and material furnished; that, by the appropriation, the legislature attempted to grant to

Govan extra compensation for the performance of the services under the contract after the contract had been entered into and the services rendered, in violation of § 25, art. 2, of the state constitution; and that said appropriation is invalid for the further reason that it directs the expenditure of public money for a private purpose and takes the property of the taxpayers without just compensation and without due process of law, in violation of §§ 5 and 7, art. 8, and of §§ 3 and 16, art. 1, of the state constitution, and of the fourteenth amendment to the Federal constitution.

The answer in the Rydstrom case is, *mutatis mutandis*, essentially similar. To such answers relators, respectively, have filed demurrers on the grounds as follows:

"(1) That the court has no jurisdiction to determine or adjudicate the matters therein alleged.

"(2) The court has no jurisdiction over the subject-matter and things therein alleged.

"(3) That it affirmatively appears that the legislative department of the state has already determined and adjudicated the matters and things therein alleged, and the determination by the legislature is conclusive upon the courts.

"(4) That the allegations contained in the affirmative answer are insufficient to constitute a defense herein."

Although by a provision of the constitution and an act of the legislature in pursuance thereof the state has agreed it may be sued, nevertheless it has the power, without litigation, to provide relief by way of compensation on account of services rendered or material furnished for its benefit. If this is in fact such a law as it purports upon its face to be, there can be no question that it does not offend any of the provisions of the state and Federal constitutions invoked by the *Attorney General*. On the contrary, if it does not

rest on such foundation, but proceeds from motives of the legislature, in spite of facts asserted in respondent's answer, it would possess none of the virtues or essentials of law under applicable constitutional limitations. However, by the demurrers interposed, relators contend that such a defense is not available to respondent, and with that contention we agree. Insisting there is power in the court to do so, respondent urges us to inquire into the allegations of fraud set out in the answers and to set aside the relief appropriation if those allegations shall be established by the evidence. Exactly what is sought by respondent is to have the court, as triers of facts, impeach the judgment of another and co-ordinate branch of the government, as triers of facts. In declining to do so, we rely not alone upon a consideration of the well-recognized delicacy of judicial interference with legislative powers, but also upon the cold and manifest reason that, by the clearly-defined and respected form of coordinate departments of our government, we have no power to do so. Courts may declare legislative enactments invalid in some cases, but not because judicial power is superior in degree or dignity to the legislative; and it will be found, according to the general rule, that such declarations are the results of consideration of the enactments as they appear upon their faces, or influenced by facts within common knowledge and of which courts take judicial notice. *State v. Sommerville,* 67 Wash. 638, 122 Pac. 324; *Stevenson v. Colgan,* 91 Cal. 649, 27 Pac. 1089. The act in question is fair upon its face. Such an appropriation should rest upon facts justifying the relief granted, which is the case here, for, as was said in *Farquharson v. Yeargin,* 24 Wash. 549, 64 Pac. 717:

"If evidence was required of a fact, it must be supposed that it was before the legislature when the act

was passed; and, if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding."

See, also, Cooley, Constitutional Limitations (7th ed.), 257; *State ex rel. Attorney General v. County of Dorsey,* 28 Ark. 379; *Rumsey v. People,* 19 N. Y. 41.

Still further, if the text of the act itself be examined and applied, the same result will be reached; for it says: "For services performed and materials furnished the state for which he has not been paid." Concerning the subject of inquiry by the courts into legislative motives and facts upon which their enactments rest, Judge Cooley, in his work on Constitutional Limitations (7th ed.), at page 258, immediately following a statement essentially the same as that just above quoted from *Farquharson v. Yeargin,* has well said:

"And although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature where fraud and corruption were alleged, and annul their action if the allegations were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon."

A few of the leading cases may be examined. *Farquharson v. Yeargin, supra,* was a case involving a special act of the legislature creating a new county. The constitution (Art. 11, § 3) declares that: "No new county shall be established which shall reduce any county to a population less than four thousand, nor shall a new county be formed containing a less population than two thousand." An attempt was made in the case to show that these provisions had been violated by the act creating Ferry county. The court, in deciding that the legislative finding as to the facts was conclusive, and quoting from another authority, said:

"The legal presumption, therefore, is that, when the act creating the county of Ferry was passed, these facts had been proved to the satisfaction of the legislature; otherwise, that body would not and could not have passed the act. All of the members of the legislature were sworn to support the constitution of the state, and it is not to be presumed that the legislature would violate their oath of office by passing the act, without the proof necessary to enable them to do so. The act appears to have been approved by the governor, and the same presumption attaches to his act of approval. As was said by the supreme court of West Virginia in *Lusher v. Scites,* 4 W. Va. 11:

" 'To exercise the power, the legislature must inform itself of the existence of the facts prerequisite to enable it to act on the subject. How it shall do so, and on what evidence, the legislature alone must determine; and when so determined, it must conclude further inquiry by all other departments of the government; and the final action terminating in an act of legislation in due form, must of necessity presuppose and determine all the facts prerequisite to the enactment; and that, too, as fully and as effectually as a final judgment of a competent judicial tribunal of general jurisdiction would do in like case.' "

Continuing, we said:

"Courts, in considering such acts, unless contrary facts appear affirmatively in the act under consideration, must assume that legislative discretion has been properly exercised."

In the case of *Barker v. State Fish Commission,* 88 Wash. 73, 152 Pac. 537, Ann. Cas. 1917D 810, the plaintiff sought to enjoin defendants from enforcing the provisions of the fisheries code of 1915, on the ground that the law, if enforced, would deny to him and all other gill-net fishermen privileges and immunities granted to others, in violation of art. 1, § 12, of the state constitution and of the fourteenth amendment to the Federal constitution. A demurrer to the

complaint opened the way for a discussion by the court of plaintiff's contention that the complaint presented a condition calling for the taking of evidence in court, concerning which it was said, at page 80:

"The suggestion that the court should hear evidence touching the question of the constitutionality of a statute is somewhat startling when the possible far-reaching effect of such a course is, upon reflection, rendered apparent. Manifestly, such is not the rule, as has been clearly pointed out in numerous decisions, among which are: *Stevenson v. Colgan,* 91 Cal. 649, 27 Pac. 1089, 25 Am. St. 230, 14 L. R. A. 459; *Pittsburgh, C. C. & St. L. R. Co. v. State,* 180 Ind. 245, 102 N. E. 25, L. R. A. 1915D·458, and notes."

Other cases in this court, not further referred to, while possibly not so nearly in point, declare principles in harmony with these views.

The case of *Stevenson v. Colgan,* 91 Cal. 649, 27 Pac. 1089, 25 Am. St. 230, 14 L. R. A. 459, referred to in the case of *Barker v. State Fish Commission,* was similar to the present case. The legislature of California had passed a law for the relief of Stevenson, appropriating one hundred and twenty-five dollars ($125) per month for twenty-one months, which he sought to enforce. The answer alleged that Stevenson never had any claim against the state and that the appropriation was intended as a gift, and then set up the fact that work on his own responsibility in surveying and charting a bay and certain rivers in California constituted the foundation of the alleged claim. The answer appealed to provisions of the state constitution which prohibited the legislature from making a gift to any individual, and which also provided that the legislature should have no power to grant any extra compensation or allowance to any officer, agent, servant or contractor, after services had been rendered or a contract entered into and performed

wholly or in part. The court, after referring to the abuses the provisions of the constitution were intended to reach, and stating that, if the facts as alleged in the answer were true, the act of the legislature ought never to have been passed, said:

"But these facts do not appear upon the face of the act itself, and the question is thus presented, whether it is competent for the court in this or any form of action to receive evidence *aliunde* to establish such facts, and thus to impeach and overthrow a law which, upon its face and independent of proof, is presumptively valid."

Further on the court said:

"In our opinion, the question which we have stated as the one for decision here must be answered in the negative. While the courts have undoubted power to declare a statute invalid, when it appears to them in the course of judicial action to be in conflict with the constitution, yet they can only do so when the question arises as a pure question of law, unmixed with matters of fact, the existence of which must be determined upon a trial, and as the result of, it may be, conflicting evidence. When the right to enact a law depends upon the existence of facts, it is the duty of the legislature before passing the bill, and of the governor before approving it, to become satisfied, in some appropriate way, that the facts exist, and no authority is conferred upon the courts to hear evidence and determine, as a question of fact, whether these coordinate departments of the state government have properly discharged such duty. The authority and duty to ascertain the facts which ought to control legislative action are, from the necessity of the case, devolved by the constitution upon those to whom it has given the power to legislate, and their decision that the facts exist is conclusive upon the courts, in the absence of an explicit provision in the constitution giving the judiciary the right to review such action. We therefore hold that, in passing upon the constitutionality of a statute, the court must confine itself

to a consideration of those matters which appear upon the face of the law, and those facts of which it can take judicial notice."

· ·The reason why the motive or purpose of the legislature in adopting laws may not be inquired into by the courts is fully and lucidly expressed in the case of *McCray v. United States,* 195 U. S. 27, at pages 54 and 55, as follows:

"The proposition, if sustained, would destroy all distinction between the powers of the respective departments of the government, would put an end to that confidence and respect for each other which it was the purpose of the Constitution to uphold, and would thus be full of danger to the permanence of our institutions. . . .  o

· "It is, of course, true, as suggested, that if there be no authority in the judiciary to restrain a lawful exercise of power by another department of the government, where a wrong motive or purpose has impelled to the exertion of the power, that abuses of power conferred may be temporarily effectual. The remedy for this, however, lies, not in the abuse by the judicial authority of its functions, but in the people, upon whom, after all, under our institutions, reliance must be placed for the correction of abuses committed in the exercise of a lawful power."

The *Attorney General,* criticizing the rule announced in *Stevenson v. Colgan, supra,* says:

"The court contradicts itself in the same paragraph because if it takes an explicit provision in the constitution to empower the court to ascertain facts upon which the legislative action was based, then certainly it would require constitutional authority to enable the court to take judicial notice either of those facts or of such other facts as the court might deem material."

In respect to a judicial review, there is a vast difference between the finding by the legislature of the existence of facts of a disputable sort and a declaration

by it attempting to establish a right or prohibit a wrong dependent upon the existence of facts of a character with reference to which there can be no dispute. This is clearly illustrated by the case of *Zimmerman v. Brooks,* 118 Ky. 85, 80 S. W. 443, cited by respondent. It involved the validity of an act of the legislature of Kentucky creating a new county, the area of which was described in the act by metes and bounds, and taken from the territory of three counties theretofore established. The constitution of that state provided:

"No new county shall be created by the General Assembly which will reduce the county or counties, or either of them, from which it shall be taken, to less area than four hundred square miles; nor shall any county be formed of less area; . . ."

The court, in effect, held the act invalid because the area included within the calls of the description showed the new county attempted to be created would contain less than four hundred square miles, and that it would reduce the area of counties, of which it must take judicial knowledge, from which it was taken to less than four hundred square miles. In such a case it is apparent the validity of the law appeared upon the face of the act and other acts of the legislature creating the old counties, of which by all authority the court must take judicial notice, to the same effect as if the former acts creating the old counties were a part of the act under consideration to the same extent as if rewritten therein. It is true that, after thus practically deciding the case, the court, in resting its judgment, preferred to go further and allow the filing of a petition in intervention by one of the old counties, which presented questions of fact requiring a judicial inquiry, but for the expressed reason that a county, such as the intervener, being a corporation, its rights are as sacred as any other rights guaranteed by the

constitution to other corporations or private persons, and that the statute, if allowed to stand, would, under the situation, prejudice its private rights, and likened it to a case of attempting to take private property for public purposes without just compensation. This, like the rate cases relied on by respondent, refers to an entirely different class of cases which involve private rights alone and are protected by the due process of law clauses of the state and Federal constitutions.

The case of *Cook County v. Chicago Industrial School*, 125 Ill. 540, 18 N. E. 183, 8 Am. St. 386, 1 L. R. A. 437, is one in which the statute involved contained no finding of fact whatever and, by its nature and terms, required none by the legislature or the court. It was one making an appropriation to take care of dependent girls. The controversy was whether or not the plaintiff, a religious institution, was entitled to collect pay for the care of such girls, because of the inhibition of § 3, art. 8, of the Illinois constitution against any payment from public funds in aid of any sectarian institution.

Respondent urges upon our consideration the case of *State ex rel. Consolidated Stone Co. v. Houser*, 125 Wis. 256, 104 N. W. 77, 110 Am. St. 824. It was a case in which the legislature had made an appropriation to pay for material used in the construction of a public building. Upon refusal of the secretary of state to issue a warrant, the beneficiary brought an action to compel him to do so. The trouble with the case, for the purpose of throwing any light upon our present inquiry, is that, in the petition for a writ of mandamus, the relator, with much detail, set out a state of facts which it was claimed by the petitioner induced the legislature to pass the act, which conclusively showed that the act, as the court said, "was merely an attempt to donate from the public treasury the amounts therein

mentioned to the private persons therein named in payment of Mr. Bentley's private indebtedness to them." The court held the appropriation act invalid, but in doing so received no evidence, but simply took the statute to mean what petitioner alleged it meant, nor did it discuss the question of a judicial review of legislative findings of fact necessary to support an appropriation for the relief of an individual.

Other cases cited by respondent have been examined by us, but are not discussed herein because not applicable to the particular question in this case.

We conclude that the appropriation act in question is a valid one, and in the Rydstrom case the writ will issue as prayed for. In the Govan case, we notice the answer of respondent denies the death of David Govan, the beneficiary under the act, and denies the representative character of relator, Hugh Govan, which present issues of fact to be tried out. If the issues are more than formal, upon advice to that effect an order will be made for trial; otherwise the writ will issue in the Govan case as prayed for.

HOLCOMB, C. J., TOLMAN, MACKINTOSH, and MAIN, JJ., concur.