STATE EX REL. MINERAL COUNTY ET AL., RELATORS, *v.*
STATE HIGHWAY COMMISSION ET AL., RESPONDENTS.

(No. 6,288.)

(Submitted February 20, 1928.   Decided March 8, 1928.)

[265 Pac. 1.]

*Mandamus—State Highway Commission—Federal Forest Road
may be Included in Construction Program—Statutory Con-
struction—Rule.*

Highways—Fact That Piece of Road is Portion of Federal Forest Road
Does not Debar Highway Commission from Including It in Con-
struction Program.
　1. *Held,* on application for writ of mandate to compel the state
highway commission to include within its construction program a
piece of road, a part of the federal highway system, which during
periods of high water is rendered impassable, leaving no highway
connection between a county seat and the rest of the county, that
the fact that the road in question is a part of the federal forest
road does not deprive the highway commission of authority of
expending any portion of the gasoline license tax funds derived
under Chapter 19, Laws of 1927, and Initiative Measure No. 31,
Laws of 1927, page 604, in matching funds provided by the Fed-
eral Aid Act, nothing appearing in either prohibiting it from
doing so.

Statutory Construction — Where Language Plain, Statute Construes
Itself.
　2. In the construction of statutes the intention of the legislature
in enacting them must be arrived at from the meaning of the
words used, and if the language used therein is plain, simple,
direct and unambiguous, it does not require construction—it con-
strues itself.

[1]  Highways, 29 C. J., sec. 310, p. 585, n. 84.
[2]  Statutes, 36 Cyc., p. 1107, n. 31.

Original application for a Writ of Mandate by the State of
Montana, on the relation of Mineral County and others, against
the State Highway Commission and others. Peremptory writ
ordered issued.

2.  See 23 Cal. Jur. 721, 726, 730; 25 R. C. L. 957, 961.

*Mr. Howard Toole* and *Mr. Eugene Harpole,* County Attorney of Mineral County, for Relators, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Respondents, submitted a brief; *Mr. Angstman* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

What is known as the "federal aid highway system" had its inception by the passage on July 11, 1916, of an Act of Congress "to provide that the United States shall aid the states in the construction of rural post roads, and for other purposes." (39 Stats. at Large, 355.)

This Act defined rural post roads, provided that no money apportioned thereunder should be expended in any state until its legislature had assented to its provisions and detailed the conditions under which a state might receive the aid provided. This Act was amended by the Act of February 28, 1919 (40 Stats. at Large, 1200), but no change was made in its general provisions.

On November 9, 1921, apparently for the purpose of providing a better distribution of the funds amongst the states and over a more clearly defined and limited system of highways, Congress adopted a comprehensive amendment to the Act of July 11, 1916 (42 Stats. at Large, p. 212), which authorizes the distribution of federal funds amongst the states in aid of highway construction under the supervision of the Secretary of Agriculture, upon projects submitted to and approved by him. It is required that before such approval is made, the state shall have made provisions for state funds required each year for the construction, reconstruction and maintenance of federal aid highways, which funds shall be under the direct control of the state highway department. Upon the approval of such projects, it is provided that federal funds shall be made available to the states for expenditure in connection there-

with, in an amount not to exceed fifty per cent of the total estimated cost thereof.

In section 6 of the Act (23 U. S. C. A., sec. 6) it is provided: "That in approving projects to receive federal aid under the provisions of this Act the Secretary of Agriculture shall give preference to such projects as will expedite the completion of an adequate and connected system of highways, interstate in character."

Examination of our statutes establishing the State Highway Commission (Sess. Laws 1917, Chap. 170, p. 424; Sess. Laws 1921, Chap. 207, p. 412), which were superseded by Chapter 10 of the Laws passed at the Extraordinary Session of the Seventeenth Legislative Assembly (Sess. Laws 1921, p. 752) now appearing as sections 1783 et seq., Revised Codes 1921 (except the amendment to section 1783 of the Sess. Laws of 1925, p. 225), discloses that it was originally created, and has been continued in existence, for the purpose of securing a uniform system of highways throughout the state, and of obtaining the benefit of federal aid under the Acts of Congress, which Acts were expressly assented to (Rev. Codes 1921, sec. 1791; Sess. Laws 1917, p. 427; and Sess. Laws of 1921, p. 415).

At the general election held in 1926 there was submitted to and adopted by the people a measure (designated as "Initiative Measure No. 31"), which, for convenience, may be referred to as the "Gasoline License Tax Law," amending sections 2382, 2383 and 2392 of the Revised Codes of 1921 (Laws of 1927, p. 604), which provides that every distributor shall pay a license tax in an amount equal to three cents per gallon for each gallon of gasoline coming within its provisions, and further provides (sec. 2392, as thus amended): "All money received by the state treasurer in payment of license taxes under the provisions of this Act shall be deposited by him and credited to the state highway fund. All money so collected and deposited in the state highway fund shall be used and expended by the state highway commission in the construction, reconstruction, betterment, maintenance, administration and engineering on the federal highway system of highways in this

state selected and designated under the provisions of the Federal Aid Act, approved July 11, 1916, and the Federal Highway Act approved November 9, 1921, and all amendments thereto. * * * It shall be the duty of the state highway commission, in expending such money, to carry forward construction from year to year, using the money expended through the matching up of federal aid allotments to Montana upon the said federal highway system of highways in the various parts of the state, so far as it may be possible within a reasonable development of the whole federal highway system, in proportion to the amount of mileage still to be constructed in the various sections of that system.''

In 1927 the Legislative Assembly adopted Chapter 18 of the Laws of 1927, page 27. Section 1 thereof divides the state into twelve districts for the purpose of apportioning the expenditure of the state highway fund, including the gasoline license tax, and district No. 8, thus created, includes Mineral county. Section 2 of this Chapter is virtually a copy of section 3 of the measure adopted by the people at the election in November, 1926, the only difference being in the provision found at the end of section 2, which says that the money must be spent in the various districts ''in proportion to the amount of mileage still to be constructed in the various sections of that system as defined in section one of this Act''; and in the last three lines of the section, where the following appears: ''Provided that nothing in this Act shall be construed to conflict with said Federal Aid Highway Acts and the rules by which they are administered.''

Section 3 of the Chapter recites: ''The total uncompleted mileage in each of said districts bears the following percentages respectively to the total uncompleted mileage of said federal highway system in this state: * * * In district No. 8, 10.08 per cent.''

At the same legislative session there was passed Chapter 19 of the Laws of 1927, page 29, making additional provision for the collection of gasoline license tax money, and in section 13 thereof it is provided: ''All money received by the state treas-

urer in payment of license taxes under the provisions of this Act shall be deposited by him in, and credited to, the state highway fund. All money so collected and deposited in the state highway fund shall be used and expended by the state highway commission in the construction, reconstruction, betterment, maintenance, administration and engineering on the federal highway system of highways in this state selected and designated under the provisions of the Federal Aid Act, approved July 11, 1916, and the Federal Highway Act, approved November 9, 1921, and all amendments thereto.''

West of the town of Superior, county seat of Mineral county, there is a piece of highway about 3.582 miles in length, wholly upon and a part of the federal highway system, which comprises a part of an interstate and intercounty highway and has been designated as a primary and interstate highway and put upon route No. 2 of the federal highway system of this state by the state highway commission, and approved by the Secretary of Agriculture as a part of said system on October 9, 1922, under the Act of Congress of November 9, 1921.

This piece of road extends along the north bank of, and immediately adjacent to, the Missoula River and is uncompleted under the standards required by the federal highway system, and is and will be in an unsafe condition due to the flooding and erosion of the same by the river, and during the period of high water is impassable, leaving no highway connection between the county seat of the county and the west end thereof, and there is a probability that residents of said county and intercounty and interstate tourists will find it impossible to travel thereon during the season of 1928, because said highway is the only one available for travel through said county. By reason of the present condition of this piece of highway an emergency exists which can only be met by the construction, reconstruction and betterment of the highway at that point. The county of Mineral is without funds or means to provide the necessary materials and labor for making the required improvements.

Federal aid funds are available for expenditure in the construction, reconstruction and betterment of said piece of highway, provided state funds can be used to match the same. There is now on hand in the state highway fund a large amount of money available for construction, reconstruction, betterment and engineering of the federal highway system of the state, and particularly in district No. 8, including Mineral county.

The relators made a demand upon the respondents that they take steps to place the construction, reconstruction and betterment of this piece of highway on their construction program for the year 1928, so that the existing and threatened emergency might be met and adverted. To this application the respondents made reply to the effect that they appreciate the necessity of the improvement, and that so far as their discretion was concerned, said piece of highway should be put upon the construction program for 1928, and would be so placed but for the fact that, under the law, they were precluded from expending any portion of the gasoline tax money thereon, because it is on a forest highway, and for that reason alone they declined to take any steps toward the improvement of said highway, or to place the same upon the 1928 construction program.

The relator Paul Guimont, a citizen, resident and taxpayer of Mineral county, is one of the duly elected, qualified and acting members of the board of county commissioners thereof, and likewise chairman of the board. The relator George Cooper is a citizen, resident and taxpayer of said county, a user of the highways therein, and has been, and will be, a purchaser and user of gasoline upon which he pays to his dealer in said county a license tax in the sum of three cents per gallon. The relators, as citizens, residents and taxpayers of Mineral county, for themselves individually and in behalf of others similarly situated, and for and on behalf of the county, filed in this court a petition for a writ of mandate, reciting the foregoing facts in great detail, and, in addition thereto, that the refusal of the respondents to place the described piece of high-

way upon their construction program for the year 1928, in accordance with the demand made upon them, "was not and is not based upon an exercise of the discretionary powers conferred upon said respondents, but is, in fact, based upon an erroneous and arbitrary interpretation of the laws of this state relating to the expenditure of gasoline tax money"; that by reason of this action of the respondents it will be impossible to obtain federal aid funds for the improvement of said highway, and the same will remain indefinitely in a state of bad repair or entirely impassable, to the prejudice and injury of the residents of Mineral county and the traveling public generally; that by reason of this condition said highway is subject to, and entitled to be improved out of, the gasoline tax money and the improvement thereof is an act which the law specially enjoins upon respondents as a duty resulting from their respective offices; and that the relators have no plain, speedy or adequate remedy in the ordinary course of law.

The petition contained further recitals which we deemed sufficient to justify this court in assuming original jurisdiction, and upon its filing an alternative writ of mandate was issued as prayed for, commanding the respondents to do the things demanded of them by relators, in respect to said piece of highway, or that they show cause before the court why they had not done so. On the return day to this writ the respondents appeared by answer. The only additional fact matter alleged in the answer was that "the portion of the federal highway system" referred to in the petition "lies within a national forest and constitutes a part of the federal forest road system," and that fact was admitted by the relators. The answer did not raise an issue upon any material question of fact recited in the petition.

The only question presented for our determination is whether [1] funds derived from the Gasoline License Tax Law (Laws 1927, Chap. 19, p. 29) and Initiative Measure No. 31 (Laws 1927, p. 604) may be expended upon a portion of the federal

highway system of the state which is coincident with a forest road.

The original Federal Act of July 11, 1916, supra, as well as the amendments thereto, to which reference is made above, each provides funds for the construction of roads and trails of primary importance for the protection and utilization of the national forests, but neither of them excludes such forest roads from participation in the funds made available to the states for expenditure upon the system of the federal aid highways provided for therein.

In the petition filed herein it is alleged that federal aid funds are available for expenditure upon the piece of highway in question, provided state funds may be used to match the same, and this is admitted in the respondents' answer. From this it appears that the federal government intends to, and does, expend its highway aid money upon portions of the federal aid highway system which are coincident with forest roads.

It is the contention of the respondents that the state highway commission is without authority to place the piece of highway in question upon its highway construction program for the year 1928, or to take any steps to secure federal aid funds for the construction thereof, or to expend any portion of the gasoline tax money in the highway fund of the state thereon, for the reason, as they say, that it is a part of the forest road system, and that in making up the total percentages of uncompleted mileage referred to in section 3 of Chapter 18, Laws of 1927, the mileage of forest roads or highways included in said federal aid highway system was excluded and not considered. It is claimed that such exclusion is shown by certain maps and charts in the office of the respondents, and also by certain official and unofficial informaton given to the public prior to the election at which Initiative Measure No. 31 was adopted by the people. We are asked to consider these matters in interpretation of our statutes making provision for the distribution of these funds. This cannot be done.

It is difficult to discover how language could be found, the meaning of which could be plainer and less obscure than that

used in section 2392, Revised Codes of 1921, as amended in Initiative Measure No. 31, when it is said that "it shall be the duty of the state highway commission, in expending such money, to carry forward construction from year to year, using the money expended through the matching up of federal aid allotments to Montana upon the said federal highway system of highways in the various parts of the state, so far as it may be possible within a reasonable development of the whole federal highway system, in proportion to the amount of mileage still to be constructed in the various sections of that system." Nothing appears therein from which it could be implied that a part of "the whole federal highway system" which is coincident with a part of a forest road should be excluded therefrom.

The language of section 2 of Chapter 18 of the Laws of 1927, page 27, is substantially the same as that above quoted, and is equally clear and explicit in directing that the gasoline tax money shall be expended by the highway commission "in proportion to the amount of mileage still to be constructed in the various sections" of the federal highway system, established by that Act. And when it is said in section 3 that the total uncompleted mileage in district No. 8 is 10.08 per cent of the total uncompleted mileage of the system in this state, the legislative intent was expressed in words so direct and explicit as to leave no doubt as to what it was.

To yield to the contention of respondents would require that there be read into section 3 of Chapter 18 of the Laws of 1927, in two places after the word "mileage," the expression "exclusive of forest roads." This cannot be done.

In *Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878, it is said: [2] "It is a rule which has been in force in this jurisdiction for more than thirty-five years, that, whenever the language of a statute is plain, simple, direct and unambiguous, it does not require construction, but it construes itself." In the earlier case of *State* v. *Cudahy Packing Co.*, 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833, the universally recog-

nized rule is stated in these words: "The intention of any legislation must be inferred in the first place from the plain meaning of the words used. If this intention can be so arrived at, the courts may not go further and apply other means of interpretation." And in *Northern Pac. Ry. Co.* v. *Sanders County,* 66 Mont. 608, 214 Pac. 596, this language is used: "It is not allowable to interpret what has no need of interpretation, or, when the words have a definite and precise meaning, to go elsewhere in search of conjecture, in order to restrict or extend their meaning."

The language of Initiative Measure No. 31 and of Chapter 18 of the Laws of 1927, above referred to, being plain, simple and direct, we must conclude that there is nothing in it which would prohibit the respondents from using the state highway fund, and particularly that portion thereof derived from the gasoline tax money, to match the federal aid highway money for the construction, reconstruction, betterment, maintenance and engineering of, or in connection with, the piece of highway in question, because it constitutes a part of the federal aid highway system which is coincident with a forest road.

Under the admitted facts it appears that it is the plain duty of the respondents to put the piece of highway involved upon their construction program for the year 1928, and proceed to cause the same to be surveyed, constructed and reconstructed in accordance with the specifications for highways upon the federal highway system of this state, and to take the steps necessary to secure federal aid funds for the same, and to set aside and allot thereto from the gasoline tax money in the state highway fund such sums as may be necessary, together with federal aid and other funds available therefor, to construct or reconstruct the same, and to proceed to expend such sums for that purpose.

For the reasons above stated, it is ordered that the writ of mandate issue as prayed for.

It is hereby determined that the respondents appeared and made defense in this proceeding in good faith, and it is or-

dered that the relators' costs be awarded against the state of Montana. (Sess. Laws 1925, Chap. 5, p. 5.)

*Writ ordered issued.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, MATTHEWS and GALEN concur.

Rehearing denied March 22, 1928.