STATE EX REL. CLIFTON, APPLEGATE & TOOLE, RE-
SPONDENTS, *v.* STATE HIGHWAY COMMISSION ET AL.,
APPELLANTS.

(No. 6,314.)

(Submitted April 9, 1928. Decided May 17, 1928.)

[267 Pac. 499.]

*Mandamus — State Highway Commission — Construction Con-*
*tracts—Federal Aid Projects—Refusal to· Certify to Bureau*
*of Public Roads Balance Due Contractor—Constitution—*
*Statutes—Legislative Appropriations—Courts may not Inter-*
*fere—Statutory Construction—Presumption—Claims Against*
*State—Release by Contractor—When not Conclusive.*

Statutory Construction.
  1. In construing a statute it is immaterial to consider what may
  have been the legislative thought; if no ambiguity exists in it
  and the language used plainly expresses an intent, the letter of the
  law will not be disregarded, but it must be assumed that the legis-
  lature meant what the words of the law, as commonly understood,
  import.

Statutes—Constitutionality—Presumption.
  2. A legislative enactment is presumed to be constitutional, and
  every intendment is in its favor.

Highways—Statute Making Appropriation for Payment of Balance Due
  Contractor—Constitutionality.
  3. Under the above rules *held,* that House Bill No. 353, page
  406, Laws of 1925, appropriating money from the state highway
  fund in payment of a claim presented by a contractor as a bal-
  ance due from the state for the construction of a state highway
  under a federal aid project, is not open to the objection that it
  offends against the provision of section 29, Article V, of the Con-
  stitution, prohibiting the giving of extra compensation to a con-
  tractor for the purpose of making up his losses on a contract taken
  at too low a figure.

Statutes—Legislative Appropriations in Settlement of Claim Against
  State not Open to Judicial Inquiry—Constitution.
  4. *Held,* on mandamus, that where the state, instead of consenting
  to a suit to determine the matter of a claim of a highway contractor
  against the state highway commission, chose to settle it by way
  of a legislative appropriation bill, the courts cannot go behind

1. See 23 Cal. Jur. 730; 25 R. C. L. 961.
2. See 5 Cal. Jur. 628; 23 Cal. Jur. 783; 6 R. C. L. 97.
4. Judicial inquiry into motives prompting enactment of legislation,
see notes in 1 Ann. Cas. 570; Ann. Cas. 1912A, 716. See, also, 5
Cal. Jur. 640; 6 R. C. L. 111.

the Act of the legislature nor inquire into its motives in making the appropriation, since the judiciary may not interfere with the legislative department of the state government which, having taken jurisdiction, determined the controversy as a trier of facts.

Highways — Construction Contract — Payment — Release of All Claims Against State—When not Conclusive.

5. Execution of a receipt by a road construction contractor releasing the state of all claims on approval of a final estimate of work done was not conclusive where the highway commission at the time knew there was a disputed claim for a large amount pending and which was subsequently allowed by the legislature, and where the commission itself by its action in thereafter paying both amounts at the same time did not treat it as showing payment in full.

Same—Highway Commission—Refusal to Issue Certificate of Completion of Contract to Federal Government—When Mandamus Lies.

6. Where the state highway commission in an action to compel it by mandamus to certify to the federal Bureau of Public Roads the amount due the contractor from the United States as a balance for the construction of a federal aid project, admitted its duty to make the certificate and had been advised by legislative action upon investigation that the amount sought to be certified was due under the particular contract, but refused to act, it was subject to coercion by the writ.

---

[1–3]  Constitutional Law, 12 C. J., sec. 221, p. 791, n. 19.  States, 36 Cyc., p. 886, n. 50.  Statutes, 36 Cyc., p. 1115, n. 97.

[4]  Constitutional Law, 12 C. J., sec. 387, p. 883, n. 98.

[5]  Highways, 29 C. J., sec. 349, p. 609, n. 7.

[6]  Mandamus, 38 C. J., sec. 369, p. 751, n. 7.

*Appeal from First Judicial District Court, Lewis and Clark County; W. H. Poorman, Judge.*

MANDAMUS by the State on the relation of Clifton, Applegate & Toole against the State Highway Commission and others. From a judgment ordering peremptory writ of mandate to issue, respondents appeal. Affirmed.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate* and *Mr. C. N. Davidson,* Assistant Attorneys General, for Appellants, submitted a brief; *Mr. Choate* argued the cause orally.

*Messrs. Murphy & Whitlock* and *Mr. Howard Toole,* for Respondent, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Mandamus by Clifton, Applegate & Toole, a corporation, to compel the State Highway Commission to make up an estimate or certificate and submit the same through the proper channels to the United States for payment of federal aid for the construction of a state highway under a federal aid project. From the judgment ordering a peremptory writ of mandate to issue, the State Highway Commission has appealed. Numerous assignments of error are made; the consideration of those necessary to a determination of the controversy will sufficiently indicate the nature of the assignments.

Disregarding all testimony asserted to have been improperly admitted and according full effect to the testimony adduced on the theory of the Commission, the situation presented by the record is this: In 1921 Clifton, Applegate & Toole, a corporation which has for years been engaged in construction work in this state, hereinafter referred to as the contractor, entered into a contract with the State Highway Commission, hereinafter referred to as the Commission, for the construction of the Skalkaho road in Western Montana under federal aid project No. 161–A. The contract was what is known as a "unit-price" contract, or a contract based on units of yardage and the like, and fixed no lump sum to be received by the contractor; however, based upon the estimated amount of work shown in the plans and specifications submitted to the Commission, the contractor's bid was $139,140, which was something like $58,000 less than the estimate made by the engineer of the Commission and at least $40,000 less than next lowest bid made.

As the work proceeded, some changes were made in the plans as the total of the periodical "routine estimates" of the highway engineer is $159,923.75, which total was $774.47 more than the total amount available in the highway fund for its payment at the time the road was completed.

During the construction of the road a controversy arose and was continued throughout the period of construction as to the correctness of the "routine estimates," the contractor contending that it was not getting all that it was entitled to under the contract, which contention was always disputed by the Commission; nevertheless the contractor continued the work and completed the road to the entire satisfaction of the Commission.

Thereafter the contractor presented to the Commission a claim for $126,054.59 over and above the highway engineer's estimate, which claim was made up of such items as "error in computing previous estimates"; "alterations in plans resulting in increased unit cost"; "revised classification resulting in increased amount due"; "loss due to excessive purchase of explosives and transportation of same made useless by change in character of work." This claim was examined by the engineer, who reported to the Commission that it should not be allowed, as the contractor was only entitled to the sum of $159,923.75 under the contract, and, accordingly, the Commission disallowed the claim.

Conferences were held, at which all parties agreed that the "intrinsic value" of the road was at least $72,133.30 more than the amount of the final estimate of the engineer, and it was suggested that the matter be submitted to the legislature for action. The position taken by the Commission was that in equity the contractor should receive the amount agreed upon, but in law the Commission could not pay any greater sum than shown by the engineer's final estimate, while the contractor at all times insisted that at least that amount was due under the contract.

The claim was presented to the legislature for action, and, in February, 1925, that body enacted House Bill No. 353 (Sess. Laws 1925, p. 406), entitled: "An Act appropriating money from the state highway fund for the payment of the state's proportion of the balance unpaid for the construction of a state highway known as the Skalkaho road and designated

as federal aid project No. 161–A.'' The amount appropriated was $33,902.65, and was identified in the Act as ''forty-seven per cent, the state's proportion of the balance unpaid for the construction'' of the road. At the time the Act went into effect there was no money available in the highway fund for the payment of the amount appropriated, nor was there then available any money to pay the balance of $774.47 admittedly due under the contract. In November, 1925, funds became available, and the claims were paid simultaneously; thus the contractor received all that he was entitled to receive from state funds, but did not receive fifty-three per cent of the disputed amount, which was the proportion of the money due under the contract to be paid by the federal government. The contractor then made demand upon the Commission for the certification of the estimate which would entitle it to payment of this balance of $38,230.65, which demand was refused. There is no method by which the contractor can secure the payment of this balance in the absence of the indicated action by the Commission.

1. As a basis for its judgment, the court made findings to [1–3] the effect that the contractor earned and was entitled to receive the full sum of $332,057.05 ''under the contract,'' and that, in order to make funds available for the payment of the state's portion of the balance due under the contract, the legislature passed House Bill No. 353, and, further, that the sum of $72,133.30 was agreed upon as a proper amount to be paid to the contractor in addition to the sum of $159,-923.75, fixed by the engineer's final estimate.

By specifications 1 to 4, inclusive, the attorney general challenges these findings on the ground that they are unwarranted by the evidence as above summarized, and in argument contends that the evidence shows that the Commission did not agree that the amount stated was ''due under the contract,'' and that the legislature benevolently gave to the contractor extra compensation to make up its losses on a contract taken at too low a figure.

In the first place, the court did not find that the Commission agreed that the sum stated was "due under the contract," but merely that there was a compromise agreement on that amount, and the finding that the amount was due under the contract may be based solely upon the legislative action taken.

If, as the attorney general now contends, the legislative Act was passed for the purpose stated, the Commission should not have paid the amount of the appropriation, as section 29, Article V, of the Constitution distinctly declares that: "No bill shall be passed giving any extra compensation to any * * * contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim made against the state without previous authority of law, except as may be otherwise provided herein." There is, of course, no provision in the Constitution for the payment of a claim for losses suffered by reason of the exercise of poor judgment in entering into a contract with the state.

Under the above provision, while the legislature could properly make provision for the payment of an amount due under the contract, it was absolutely prohibited from giving to this contractor any extra compensation from state funds for the work contemplated by his contract. (*Mills* v. *Stewart*, 76 Mont. 429, 47 A. L. R. 424, 247 Pac. 332; *State ex rel. Mills* v. *Dixon*, 66 Mont. 76, 213 Pac. 227.) If counsel is correct as to the purpose of the Act, it is clearly unconstitutional and should not be made the basis of any action on the part of the Commission, although that body recognized its constitutionality by paying the amount appropriated.

In considering this question it must be borne in mind that at all times the contractor insisted that the amount agreed upon was "due under the contract," and that, while the Commission contended to the contrary, the Commission did not oppose the presentation of the claim to the legislature, and consequently its position was not made known to the members of the legislative assembly. It must therefore be assumed that a strong showing was made to the legislature that the

amount claimed was due "under the contract," as the record contains a fair justification for the contention of the contractor.

We cannot assume that the legislature intended to do an unlawful act or to pass an unconstitutional bill, and the Act in question unequivocally treats the total amount of $72,133.30 as an unpaid balance due the contractor, which amount under the law, could only be due "under the contract," and, therefore, that body must have intended to make the amount stated available for payment of the balance due under the contract.

However, "it is immaterial what may have been the legislative thought; if no ambiguity exists in what the lawmakers said, and the language of the statute plainly expresses an intent, the letter of the law will not be disregarded under the pretext of pursuing its spirit." (*Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878; *Osterholm* v. *Boston & Montana Co.*, 40 Mont. 508, 107 Pac. 499; *King* v. *National M. & E. Co.*, 4 Mont. 1, 1 Pac. 727.)

"The legislature must be assumed to have meant precisely what the words of the law, as commonly understood, import; and this may be said to be the fundamental and controlling rule of construction." (*Northern Pac. Ry. Co.* v. *Sanders County*, 66 Mont. 608, 214 Pac. 596. See, also, *State ex rel. Mineral County* v. *State Highway Commission*, ante, p. 63, 265 Pac. 1.) A legislative enactment is presumed to be valid, and every intendment is in its favor. (*State ex rel. Stephens* v. *Keaster*, ante, p. 126, 266 Pac. 387.)

Under the above rules we must hold that the Act under consideration is a valid enactment of the legislature, which definitely determined that the full amount of $72,133.30 was due to the contractor under his contract, and appropriated from the state highway fund the full amount the state was required to pay, or forty-seven per cent of the unpaid balance due.

2. What, then, is the obligation of the Commission with [4] reference to the remainder of this unpaid balance? That body has admitted in its answer that its duty is to prepare

and render to the Bureau of Public Roads of the United States estimates and certificates covering the work done under the contract and the amount due the contractor therefor, and it has been advised by the legislature that the full amount agreed upon as the "intrinsic value" of the road was due "under the contract," but the Commission refuses to perform the duty admitted, on the theory that the court should go behind the Act of the legislature and determine the question of fact anew on a theory which it did not see fit to present to the legislature and after it has acknowledged the legality of the Act by the payment of the state's proportion of the amount therein found to be due under the contract.

This contention was made in *State ex rel. Govan v. Clausen*, 108 Wash. 133, 183 Pac. 115, wherein a contractor sought by mandamus to compel the state auditor to pay the amount appropriated by the legislature "for services performed and materials furnished the state, for which he has not been paid." In that case, as here, the action was taken as the result of a controversy over a highway construction contract, and it was there held that, while the state might have been sued for the amount claimed by the contractor, it had the power to provide for compensation without litigation, and, where the controversy is thus settled, the court cannot go behind the statute and hear evidence to determine whether or not the amount was due, as one branch of the government cannot impeach the judgment of another and co-ordinate branch of the government as triers of fact, nor inquire into the motives of the legislature in making the appropriation. The court there quoted the following from Cooley on Constitutional Limitations, seventh edition, at page 258: "Although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature when fraud and corruption were alleged, and annul their action if the allegations were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon."

In other words, the state had two courses open to it for the settlement of the controversy which arose between this contractor and the Commission; it could have consented to a suit in the courts to determine the matter, or, acting through its legislative branch, could as a trier of fact, determine the controversy without suit. Having adopted the latter method it cannot require the co-ordinate branch of the state government, the judiciary, to re-examine the facts and set aside the action of the legislature.

True, as urged by the attorney general, the Commission did not question the validity of the enactment when the claim was presented for payment, but complied with the mandate of the legislature; but the Act goes further than this; it determined, as it was necessary for the legislature to do in order to afford relief, that the full amount stated was an unpaid balance due the contractor of which the state was required to pay but forty-seven per cent. By this determination we are bound in the present action. The reason for this is clearly expressed in *United States* v. *McCray,* 195 U. S. 27, 1 Ann. Cas. 561, 49 L. Ed. 78, 24 Sup. Ct. Rep. 769, wherein it is said, in answer to the argument that the power of the judiciary should be exercised to correct abuses of legislative power: "But this reduces itself to the contention that, under our constitutional system, the abuse by one department of the government of its lawful powers is to be corrected by the abuse of its powers by another department. The proposition, if sustained, would destroy all distinction between the powers of the respective departments of the government, would put an end to that confidence and respect for each other which it was the purpose of the Constitution to uphold, and would thus be full of danger to the permanence of our institutions." Quoting from *Kilbourn* v. *Thompson,* 103 U. S. 168, 26 L. Ed. 377, the opinion continues: "It is believed to be one of the chief merits of the American system of written constitutional law, that all the powers intrusted to the government, whether state or national, are divided into the three

grand departments, the executive, the legislative, and the judicial. That the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined. It is also essential to the successful working of this system that the persons entrusted with power in any one. of these branches shall not be permitted to encroach upon the powers confided to others.'' It is then said that, if relief is to be had from legislative abuse of power, it must come from the people and not from the courts.

The legislature having taken jurisdiction of the controversy and determined it as a trier of fact, we are precluded from retrying those facts by the Act which indicates on its face no other than a proper motive. (*State ex rel. Govan* v. *Clausen,* above.)

Having fully determined the question as to whether or not the amount which the Commission is required by the judgment to certify to the United States was due ''under the contract,'' we need not further consider specifications of error based upon the assertion that the evidence does not support the court's findings or that certain testimony was improperly admitted.

3. It is, however, contended on behalf of the Commission [5] that, in November, 1925, the balance of $774.47 was definitely understood between the parties to be a final estimate, and that, by instruction entered in the minutes of the Commission, the signature of the contractor, on the final estimate shall ''constitute a release of all claims against the state of Montana.'' But it must be remembered that the Commission itself did not abide by its decision in the matter, as it paid the amount of the legislative appropriation simultaneously with the payment of the balance shown by the engineer's final estimate.

This defense was also raised in the case of *State ex rel. Govan* v. *Clausen,* above, but was not considered sufficient

to prevent the issuance of the writ of mandate in that case, although there the amount appropriated by the legislature had not been paid and the state was contesting its payment. Here, as the two matters were being settled simultaneously by the Commission, we cannot say that it then considered the signing of the final estimate of the engineer as receipting in full for all claims against the state, but rather that, at that time, it was understood that the two amounts thus paid constituted all that the state would be required to pay from highway funds, while the balance of the amount found due by the legislature was to come from the federal government.

Having admitted its duty to make the certificate and [6] estimate demanded, as to all amounts due under the contract, having been advised that the amount of $38,230.65 was due under the contract, and having refused to act, the Commission was subject to the coercion of the court by writ of mandate.

For the reasons stated, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.