## JOHN DE MELLO, JR., *v.* BOARD OF WATER SUPPLY, CITY AND COUNTY OF HONOLULU, AND CITY AND COUNTY OF HONOLULU.

### No. 2117.

ARGUED DECEMBER 6, 1934.          DECIDED JANUARY 30, 1935.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is an action entitled in assumpsit and tried in the circuit court jury waived. At the conclusion of plain-

tiff's evidence defendant moved "for a judgment on the pleadings, on the ground that there is a failure of proof to conform to the allegations specified in the contract." The court, quoting from its written decision, "considered said motion as a motion for involuntary nonsuit," and sustained the same, and judgment dismissing the cause at plaintiff's costs was thereupon entered. The case is before us upon plaintiff's bill of exceptions. The bill contains two exceptions, number one to the court's order that an involuntary nonsuit be entered against the plaintiff and number two to the written decision and judgment entered thereupon.

Plaintiff's amended complaint, after preliminary formal averments, alleges: "That on or about the 30th day of March, 1927, plaintiff duly contracted with the City and County of Honolulu, by the Honolulu Sewer and Water Commission" (alleged to have been succeeded by the board of water supply of the City and County of Honolulu) "for the construction of Kaimuki pump house. That under and by the provisions of said contract, said City and County of Honolulu, Territory of Hawaii, and the Honolulu Sewer and Water Commission, on, to-wit, the 30th day of March, 1927, became and were indebted to plaintiff for goods and materials furnished in the sum of thirty-two thousand five hundred seventy-seven dollars ($32,577.00) over and above all payments and offsets. That, although often requested so to do, neither defendants nor Honolulu Sewer and Water Commission have ever paid said sum of $32,577.00 or any part thereof, but have hitherto refused and do still refuse to pay the same or any part thereof." Then follows the prayer for judgment and process.

This above-quoted amended complaint was demurred to upon eight grounds including, among others, the

grounds that the complaint contained neither a copy of the contract sued upon nor allegation in substance of its terms; that it contained no sufficient averments of the respective obligations of the parties, the performance of his obligation by the plaintiff or of promise or breach on the part of the defendants or either of them or the predecessor in interest of the board of water supply, "nor are any facts therein alleged showing the right of plaintiff to recover the amount sued for or any amount." Why this demurrer was not sustained is not apparent, especially in view of the later expressed view of the trial court as to the insufficiency of the pleading. After the demurrer had been overruled defendants moved for a bill of particulars as to the following items: "1. The terms of the alleged contract of March 30, 1927, that would make the said defendant Board of Water Supply, City and County of Honolulu, responsible to the plaintiff in the sum of $32,577. or in any sum whatsoever; 2. How and in what manner the defendants, or either of them, became indebted to the plaintiff for goods and materials in the sum of $32,577. or in any other sum; 3. The details of the items making up the said sum of $32,577. which plaintiff claims is due him from said defendants." In response to the motion last above referred to the plaintiff filed an instrument entitled "Bill of Particulars," setting forth the following items only:

"1. Materials set forth on page 9 of the plans ........................................................ $7,100.00
2. Materials set forth in the first bracket on page 10 of the plans ...................... $2,400.00
3. Materials set forth in the second bracket on page 10 of the plans ...................... $13,700.00
4. Materials set forth on page 13 of plans 5,000.00
5. Materials set forth on page 12 of the plans ........................................................ 4,150.00

6. Materials set forth on page 18 of the
plans .................................................. 227.00

Total.................. ·$32,577.00

*By Sections:*
1. Section 1 of the proposal and
specifications ..................................... $ 227.00
2. Section 2 of the proposal and
specifications ..................................... $ 9,150.00
3. Section 3 of the proposal and
specifications ..................................... $23,200.00

Total.................. $32,577.00"

At the oral argument in this court plaintiff's claim was confined to item 3 ($23,200) of the schedule last above set forth and claim to the other two items for $227 and $9,150, respectively, was abandoned. The defendants' answer, a general denial, was filed April 17, 1933.

Thus far there has been no determination as to the form of action declared upon or as to the precise issues of fact presented by the pleadings. In his opening statement in the trial court counsel for plaintiff said: "This is an action to recover the reasonable value of goods and materials furnished by Mr. De Mello, the plaintiff in this action, under a contract entered into between him and the board of water supply for the construction of a structure known as the Kaimuki pump house." (Tr. p. 2.) This statement, like that contained in the complaint quoted above, lacks precision and leaves in doubt whether or not the trial was conducted upon the theory of an action upon *quantum valebant* or upon special assumpsit and the question is further complicated (a) by the statement in appellant's opening brief that "this is an action to recover the value of the materials and equipment which the 'Honolulu Sewer and Water Commission' was

obliged to furnish under the specifications and plans, but which they failed to furnish in violation of the contract between the parties, and which were actually furnished and paid for by the plaintiff and others in his behalf;" (b) by counsel's statement at the trial: "We are not suing in special assumpsit but *indebitatus* assumpsit" (Tr. p. 19); and (c) by statement of appellant's counsel upon oral argument in this court to the effect that this is an action for damages for breach of contract.

The complaint lacks essential averments in any of the foregoing aspects. Under it evidence was offered by the plaintiff and admitted by the court to the following effect: In the month of January, 1927, the Honolulu sewer and water commission issued proposal, specifications, form of proposed contract and plans for the construction of the "Kaimuki pump house," and they invited general contractors to enter bids therefor. The plaintiff, John De Mello, Jr., filed a bid in the sum of $142,959, and in March, 1927, was awarded the contract. The work of excavation and clearing preparatory to construction commenced late in March, 1927. The work was eventually completed by the plaintiff and others in his behalf in July, 1928, and was formally accepted by the Honolulu sewer and water commission.

The contract was introduced as exhibit "B." The proposal which is made a part of the contract has the following caption: "Proposal for Kaimuki Pumping Station Building, Foundations, Boiler, Boiler Equipment, Crane, Suction Header and Discharge Piping Materials and Installation, and other Equipment Job 21-W." The text of the proposal contains, among others, the following terms: "The undersigned hereby agrees to furnish and pay for such material as is required and not supplied by the commission, and to furnish and pay-for all labor, tools

and equipment to construct and install and to construct and install in place complete, at the Kaimuki pumping station, the new building, equipment foundations, boiler house and other equipment, suction header, discharge lines and other piping, * * * and perform such other miscellaneous work as called for or required to properly complete the work, all in accordance with the plans for job 21-W and these specifications * * *."

The contract executed under date of March 30, 1927, is between the "Territory of Hawaii, and City and County of Honolulu by the Honolulu Sewer and Water Commission, party of the first part and John De Mello, Jr., party of the second part:" and provides among other things "that for and in consideration of the payments hereinafter mentioned, the party of the second part hereby covenants and agrees with the party of the first part to furnish and pay for such material as is required and not supplied by the commission, and to furnish and pay for all labor, tools and equipment to construct and install and to construct and install in place complete, at the Kaimuki pumping station, the new building, equipment foundations, boiler house and other equipment, suction header, discharge lines and other piping, dismantling, removing and reinstalling the Beretania pumping station steel chimney; to grade the site, construct manholes and perform such other miscellaneous work as called for or required to properly complete the work in accordance with plans dated February 5, 1927, on file in the office of the Honolulu Sewer and Water Commission, specifications and proposal hereto annexed, which plans, specifications and proposal including any and all additions thereto or deductions therefrom are hereby made a part hereof * * *."

The specifications thus attached to the contract and made a part thereof contain among others the following

provisions (Section 16): "Any work or material within the reasonable intendment of the contemplated work that may have been omitted in the description of the work, either in plans or specifications, or both, or any work made necessary by reason of unforeseen difficulties or obstructions in the construction of said work, but which are by implication necessary in the completed work, shall be furnished and performed by the contractor the same as if they had been specifically stated, or foreseen and provided for, and without extra charge." (Section 43): "Extra Work. No work of any kind in connection with the work covered by these specifications shall be considered as extra work, or entitle the contractor to extra compensation, except that the work be ordered in writing by the engineer and specifically referred to as extra work, the amount of compensation stated in the order and accepted by the contractor."

The construction details forming part of the specifications are divided into three main sections. Section I refers to the "building," section II to the "mechanical equipment," and section III to "suction header lines and discharge lines." With sections I and II we are not presently concerned. Section III contains thirty paragraphs numbered from 96 to 125 respectively, all relating to materials and installation details regarding suction header lines and discharge lines. Paragraph 96 refers to the *work* to be done and paragraphs 118 and 119 to the *material* and equipment to be furnished. Paragraph 118 provides: "The material and equipment to be furnished by the commission are enumerated on the plans," and paragraph 119 provides: "All pipe not listed or shown as being furnished by the commission shall be furnished by the contractor."

The "plans" above referred to were introduced in evidence as plaintiff's exhibit "A." On sheets nine and ten

thereof are listed certain materials required for the construction of the suction header lines and discharge lines. Certain items have the notation "Contractor should order this material * * * from the Pacific Coast." Others authorize the use of material "on hand." The rest have no notation as to who shall furnish them. Prior to the opening of the bids and the awarding of the contract John De Mello, Jr., had ordered from the Honolulu Iron Works the materials referred to in said section 3 of his bill of particulars and had executed and delivered a written confirmation of such order under date of March 23, 1927, all subject to his contract and bond being properly approved—which latter events occurred seven days later, to wit, on March 30, 1927. Thereafter the materials were delivered on the ground and billed with other items to the plaintiff by the Honolulu Iron Works, the items referred to in section 3 of the bill of particulars aggregating in price $23,200. Plaintiff testified that after he had started to excavate for the purpose of changing the pipe he said to Mr. Kangeter who was acting in a supervisory capacity for the commission, "How about this material?" and Mr. Kangeter replied, "Oh, you better order it." Plaintiff testified that he continued working on the job until February, 1928, but refused to install the pipe unless he was paid for it. He further testified that Mr. Kangeter replied that the commission would not pay for said material. Action was then brought against plaintiff in the first circuit court by the Honolulu Iron Works for the full amount of its account including among others the items listed at $23,200 above referred to. The account was paid by Allen & Robinson, the plaintiff's bondsmen, who then took over the work and completed the job which was later accepted by the sewer and water commission in behalf of the City and County of Honolulu. The contract price has been paid in full with the exception of one thousand dollars, warrant for which is withheld temporarily.

The evidence is insufficient to support the amended complaint, whether viewed as a declaration (a) in special assumpsit, (b) *indebitatus* assumpsit upon a money count or (c) upon a *quantum valebant* for goods sold and delivered.

(a)   It is noted that the action is not in any aspect one for the balance due under the express terms of the contract and that the balance of one thousand dollars above referred to, whether due to the plaintiff or his bondsmen, is in no way involved.   It is claimed in brief and argument by plaintiff that the items aggregating in value $23,200 set forth in section III of the specifications and referred to in section 3 of the bill of particulars were under the contract to have been furnished by the defendants but that defendants did not furnish them and that they were furnished by plaintiff or in his behalf and at his expense in order that the work might be completed without delay, resulting in damage to the plaintiff in the amount last above stated.

The contention that the contract required these materials to be furnished by the commission is based primarily upon section 118 of the specifications above quoted that "the material and equipment to be furnished by the commission are enumerated on the plans," taken in connection with the proof that the material referred to is found listed on the plans.   The above-quoted provision however is not equivalent to a provision that all material and equipment enumerated on the plans are to be furnished by the commission, and this is shown clearly by the fact that materials are enumerated on the plans no matter by whom they are to be furnished and by notations on the plans to the effect that certain materials "on hand" are to be used, read in connection with section 119 of the specifications hereinabove quoted that "all pipe not listed or shown as being

furnished by the commission shall be furnished by the contractor." The pipe and other material furnished under section III of the specifications and referred to in section 3 of plaintiff's bill of particulars were not listed or shown on the plans or elsewhere as being furnished by the commission. That the contractor was required by the contract to furnish the same is clear and unambiguous from a reading of the contract itself as is shown more particularly by the above-quoted portions thereof, by the proposal, by sections 118 and 119 of the specifications all quoted above, read in connection with the plans which are part of the contract. The contract therefore does not need the aid of extrinsic evidence of contemporary construction by the parties themselves with which it is fortified in the opinion of the trial court. Neither the pleadings nor proof are sufficient to sustain recovery upon the theory of special assumpsit.

(b) and (c). The theory of general assumpsit as applied to the instant case supposes a new agreement, an implied one, based upon a sale and delivery of said materials by the plaintiff to the defendants at the latters' special instance and request, from which the law imports a promise by the defendants to pay the plaintiff the reasonable value of said materials; or else it supposes such an agreement based upon money paid by the plaintiff for the use and benefit of the defendants under conditions which import a promise by the latter to repay. The pleading as is shown by inspection alone falls short of stating a cause of action in general assumpsit, and the proof shows affirmatively that no such cause of action exists. Proof of a special contract to the contrary, as hereinabove found, is sufficient ground for the latter part of this statement, but it is not the only ground. It is not shown that the materials had been taken possession of by the defendants or had been utilized in the work at the time Mr. Kangeter notified the

plaintiff that the commission would not pay for the same. On the latter point the evidence is affirmatively to the contrary. Even if it had been sufficiently shown, which is not the case, that the material had been ordered by plaintiff in reliance upon the alleged authorization of Mr. Kangeter hereinabove quoted, and had been furnished to the defendants because of it, this taken in connection with the proof in the case would not have been sufficient to create a liability on the part of the defendants to pay for the same. The action is against the board of water supply and the City and County of Honolulu, a municipal corporation. The purchase price of the materials which the plaintiff claims he supplied but which he states should have been supplied by the board of water supply was in excess of one thousand dollars. There was no advertisement for bids but the materials were purchased from the Honolulu Iron Works by the plaintiff in the manner and at the time hereinabove related. Section 1477, R. L. 1925, applies. Quoting from said section in part: "No expenditure of public money, except for salaries or pay of officers or employees, or permanent settlements, subsidies or other claims or objects for which a fixed sum or sums must be paid by law, or for other purposes which do not admit of competition, or for the purchase of materials or supplies from any other department, bureau, organization, or municipal or political subdivision of the federal, territorial, municipal or county governments, or for the performance of public work or contracts by any other such department, bureau, organization, or municipal or political subdivision of the federal, territorial, municipal or county governments, where the sum to be expended shall be one thousand dollars or more, shall be made, except under contract let after public advertisement for sealed tenders, in the manner provided by law; * * * provided, that in the case of new road work and water works, it shall first advertise for

sealed tenders and shall keep a full and true account of the cost of the work, if done by itself, without awarding a contract therefor, and shall, upon the completion of the work, publish a full and true statement of its cost and of the amounts of rejected tenders, if any."

Courts generally have held that municipalities and other public bodies are not liable under contracts let contrary to statutes, like the foregoing, requiring competitive bidding; and furthermore, that in such instances general assumpsit will not lie even though the municipalities or other public bodies have received the benefit of performance by the other party. Thus, quoting from the syllabus of *Reams* v. *Cooley,* 171 Cal. 150, 152 Pac. 293, Ann. Cas. 1917A 1260: "Pol. Code, § 1617, subd. 22, makes it the duty of boards of trustees of school districts to let all contracts involving an expenditure of more than $200 for work to be done or materials or supplies to be furnished to the lowest responsible bidder and for the purpose of securing bids to publish a notice calling for bids. A board of trustees adopted plans for a school building, which the superintendent of schools refused to approve unless certain plastering was omitted. Such work was eliminated and a contract entered into, the contractor's bid being modified by making a proper deduction for the plastering and certain other work. The board, however, later determined to have the plastering done, and under an arrangement with the contractor contracted with plaintiff to do the work; the price being reached by taking the price for which the contractors would have done the work under their total bid and decreasing that by several hundred dollars. Held that, the cost having amounted to more than $200, the contract should have been let as required by the code, and it was no answer to this objection that the original specifications upon which the contractor's bid was made included

the plastering, and hence the contract with plaintiff was invalid." In the foregoing case the California court also held that *quantum meruit* upon an implied contract would not lie. In the text of the case last above cited and also in the copius footnotes in Annotated Cases supporting it are references to the leading case of *Zottman* v. *San Francisco,* 20 Cal. 96, found also with a long list of supporting citations in 81 Am. Dec. 96. The opinion of the California court in the *Zottman* case is by the late Stephen J. Field, then chief justice, from which the following excerpt is quoted: "It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or choose to take the hazard, he is a mere volunteer, and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard."

Again, in the case of *City of Newport* v. *Schoolfield,* 134 S. W. (Ky.) 503, 506, upon the same point it was said: "But is an implied promise to pay for this work to be raised by the fact that the city has accepted the work with the full knowledge of the changes that were made and benefits rendered by reason of the work? In Murphy v. City of Louisville, 9 Bush, 194, Murphy constructed a street under a contract which had not been executed in the manner required by the statute, and for that reason no recovery was had against the owners of the property. Murphy, however, sued the city upon the theory, that having derived a benefit from his labor, the law implied a promise on the part of the city to pay for it. But the court rejected

that contention in the following language: 'Nor is the corporation liable for the value of the work by reason of any implied promise to pay, upon the idea that the city derived a benefit from it. If so, as previously argued, it would dispense with the exercise of the power conferred by those in authority to execute contracts, and the contractor, or the party performing the work at the instance of any official of the corporation or even inhabitant of the city, could make improvements beneficial to the corporation, and thereby create an implied contract on the part of the city to pay. If the alleged contract is made otherwise than as required by the ordinance, it is not binding; and if not obligatory as a contract, the law creates no promise to pay. The difference between the contract of a private person and that of an officer of a corporation is this: An individual has the right to make, alter, or ratify a contract at his own will and pleasure with the consent of the party contracting with him; or if he stands by and permits others to work for him, and accepts the work, the law implies a promise to pay its value; while an officer of a corporation has no power to make a contract except in the manner pointed out by the statute from which the power is derived,' " citing *Zottman* v. *San Francisco, supra.* See also *West* v. *County of Hawaii,* 24 Haw. 310, 314.

Adopting the reasoning in the cases above cited, in the case at bar, under section 1477, R. L. 1925, above quoted, there can be no implied liability on the part of the board of water supply or of the City and County of Honolulu to pay for material used in the performance of public works on contracts requiring an expenditure of one thousand dollars or more without prior advertisement for bids, except in instances therein excluded from the requirement of prior advertisement, none of which exceptions are applicable to the present case.

For the reasons above set forth involuntary nonsuit was properly granted. The exceptions are overruled.

*M. K. Ashford* (*F. E. Thompson, P. Silver* and *M. K. Ashford* on the briefs) for plaintiff.

*R. A. Vitousek* (*Smith, Warren, Stanley & Vitousek* and *W. C. Tsukiyama,* City and County Attorney, on the brief) for defendants.