## JOHN DE MELLO, JR. *v.* LEONARD K. FONG, AUDITOR OF THE CITY AND COUNTY OF HONOLULU.

### No. 2627.

ARGUED OCTOBER 16, 1946.　　　　DECIDED DECEMBER 7, 1946.

KEMP, C. J., LE BARON, J. AND CIRCUIT JUDGE CASSIDY IN PLACE OF PETERS, J., ABSENT.

416

The petitioner, John De Mello, Jr., brought mandamus proceedings to compel the respondent, the auditor of the city and county of Honolulu, to draw a warrant pursuant to Act 46 of Session Laws of Hawaii 1945, which over the veto of the governor became effective on April 25, 1945. The pertinent part of this Act reads: "The treasurer of the city and county of Honolulu is hereby authorized and directed to pay upon a warrant drawn by the auditor of the city and county of Honolulu, the sum of six thousand and no/100 dollars ($6,000.00) to John De Mello, Jr., for the purpose of reimbursing said John De Mello, Jr., for the lost equipment suffered in connection with that certain contract entered into with the Honolulu Sewer and Water Commission on or about the 30th day of March, 1927, for the construction of a pumping station and equipment at Kaimuki, city and county of Honolulu; provided said amount shall be payable to said John De Mello, Jr., only upon his executing and delivering to said auditor a receipt and release in full of and for all claims and demands whatsoever which he may have against said board of water supply or said city and county, or both of them, arising out of, or in connection with, or relating to, said contract or any matters whatsoever incidental thereto." An alternative writ was duly issued. The respondent moved that it be quashed. After a hearing the circuit judge at chambers entered an order quashing the alternative writ from which order the petitioner sued out his writ of error.

Upon review of the order to quash, it is apparent from the face of the record that the efficacy of the remedy of mandamus sought by the petitioner depends primarily upon the validity of Act 46. . In quashing the alternative

writ the circuit judge did not expressly hold the Act to be invalid but one of the grounds of his order indicates such invalidity as an encroachment upon the functions of the courts. However, the question thereof was directly raised by the grounds of the respondent's motion to quash and fully argued before the circuit judge. Therefore it is properly before this court. It is the paramount question presented, the respondent's argument thereon consistently being that the Act constitutes an invalid assumption by the legislature of the judicial power of the government.

In our opinion the question of invalidity should be answered in the affirmative, thus warranting affirmance of the order of the circuit judge. There is no need to consider further the grounds thereof.

The question as presented is a constitutional one requiring the determination of whether the legislature in enacting Act 46 exercised a legislative or judicial power of government. Controlling thereof is the Hawaiian Organic Act of Congress which may be considered as the constitution of the Territory. Such Act of Congress partitions the powers of the territorial government among the three co-ordinate branches of government created by it, so that each branch is allocated a particular power. The allocation is accomplished by conferring upon the legislature the legislative power of the Territory, which shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable (Or. Act §§ 12, 55) and by vesting the executive power in the governor (Or. Act § 66) and the judicial power in one supreme court, circuit courts and in such inferior courts as the legislature may from time to time establish (Or. Act § 81).

This court has uniformly interpreted the powers so constitutionally segregated and vested to be separate and

418

distinct ones, each to be exercised by different and independent branches of the government, and likewise interpreted each branch to be supreme in its particular sphere of action. It has declared that although the legislative power is conferred by Congress in broad and liberal terms, the exercise thereof by the legislature is subject to the fundamental doctrine of American law regarding the independence of the three great branches of government. This constitutional limitation requires that the legislature respect the prerogatives of the other two branches and not usurp their functions, the courts having the duty to protect those branches from legislative inroads into their spheres of action. (*Harris* v. *Cooper*, 14 Haw. 145; *In re Cummins*, 20 Haw. 518; *In re Tavares*, 26 Haw. 101.) The independence of the judicial branch of the Territory in the exclusive exercise of its power of government, inviolate from invasion by the legislative branch, is thus the criterion upon which the issue before this court must be determined.

The recitation of facts by the alternative writ, as they are made to appear from the petition, contains the usual one ordinarily to be expected in mandamus proceedings. It is to the effect that the respondent is required to draw the warrant prescribed by Act 46 by virtue of its passage; that the drawing of such warrant is purely ministerial; that the respondent has refused to draw the warrant although the petitioner has demanded that he do so and stands ready to execute and deliver to him the receipt and release required by the Act; that the petitioner has been unsucessful in having the respondent draw the warrant and no other remedy is available to the petitioner. These facts, although material to the sufficiency of the alternative writ, are not material to and have no bearing upon the paramount question which is the validity of Act 46. The writ, however, recites other facts which are and do. Such facts in substance are that an agency of the city, after the

completion of the contract to erect the pumping station described in Act 46, acquired possession of valuable equipment and wrongfully converted it or negligently caused it to be lost or stolen, which equipment the petitioner, during the performance of the contract, had delivered to the site of the pumping station then under construction; that the agency thereby permanently deprived the petitioner of the possession of such equipment, the reasonable value of which exceeds the sum of six thousand dollars.

These later facts admittedly constitute the basis of a claim against the city for the tortious acts of its agency relative to the personal property of the petitioner and the claim itself concededly is the same one which the petitioner presented to the legislature when he procured the passage of Act 46. The claim thus sounded in tort at the time of the enactment and was one to an obligation of the city to respond in damages to the minimum extent of six thousand dollars. It arose not out of contract but tort. The difficulty, however, is that the claim, although independent of contract, is linked descriptively with the completion of a contract and the locale of its performance, the claim's description placing the time of origin as being after such completion and identifying the personal property involved in the claim with a delivery to such locale coincident with the performance of the contract. That the legislature in enacting Act 46 was aware of such casual connection or incidental relationship and intended to deal with it accordingly is evidenced by its language requiring the petitioner to execute a "release in full of and for all claims * * * arising * * * in connection with or relating to, said contract, or any matter whatsoever incidental thereto."

Generically, Act 46 may be classified as a private Act not for the public good but for the benefit of the petitioner as an individual, the legislative intent to settle his claim against the city being readily discernible from the Act as

a whole. No judicial construction is required to ascertain such an intent. A bare reading suffices to show it. Corroborative of such an intent is the effect of the Act upon the tortious claim, the presentation of which resulted in the enactment, the legislature by it clearly purporting to pass judgment on the basic facts underlying the municipal obligation to which the claim is directed and attempting thereon not only to adjudicate the city liable but fix the amount of its liability as well as direct the treasurer of the city to pay the amount fixed. Undoubtedly the settlement of the claim by the enactment amounts to a legislative adjudication in favor of the petitioner and against the city which endeavors to effectively preclude the city from presenting before a proper judicial tribunal any defenses to the claim that it may have and from contesting therein the claim of liability or the extent thereof.

The petitioner with respect to his claim to an obligation of the city to respond in damages since its inception has been authorized by statute to bring suit upon it against the city in a court of competent jurisdiction. (R. L. H. 1925, § 1721; R. L. H. 1935, § 3004; am. L. 1939, c. 242, § 4 [2]; R. L. H. 1945, § 6646.) The petitioner admittedly did not bring such suit nor did he anticipate doing so by attempting to secure legislative waiver of defenses which the city might have to such a suit, but instead procured legislative settlement of his claim against the city. In justifying this procedure the petitioner asserts that, when he presented his claim to the legislature, it was directed towards a "moral" obligation, as distinguished from a legal one, presumably on the theory that recovery at law could be defeated by the defense, as indicated by the writ and face of the Act, that the statutory period of limitations had run against the claim or by the defense, though not so indicated, that the tortious acts which occasioned the injury had been done by the municipal agency

in the exercise of functions essentially governmental in character. Assuming *arguendo* but not deciding that recovery could be so defeated, it is unnecessary to determine whether the mere availability of such defenses to a possible suit would change *ipso facto* the claim from a legal into a moral obligation on the part of the city in the absence of an actual suit to enforce it before a competent court of law wherein the defenses were properly interposed, established and sustained. Suffice it to say that this court is not concerned with questions of law and fact which would or might be presented by such or any other defenses. Neither is it concerned with any particular application of general law which might be involved in a future trial of an action in damages by the petitioner against the city for the tortious acts of its agency nor with any distinction between the legal and moral nature of the claimed obligation at the time of the enactment, whether or not the nature thereof was recognized therein by the legislature. The question of legislative encroachment does not pertain to those fields of inquiry but depends upon whether the legislature attempted to project itself into the domain of the judicial branch by adjudicating that which constitutionally required judicial determination rather than legislative.

In ascertaining whether such an attempt were made, it becomes pertinent to determine whether the legislature in settling the claim in reality adjudicated a contention or passed judgment upon disputed facts out of which the obligation of the city is claimed to have arisen. Aside from a denial in the motion to quash by the respondent as an official of the city that it ever was obligated to pay the petitioner any amount, the very staleness of the petitioner's claim at the time it was settled by the legislature some eighteen years after the inception of the claim as shown upon the face of both the alternative writ and the Act, strongly indicates that the petitioner procured the

enactment *ex parte* without notice to or attendance of a proper representative of the city and that otherwise a controversy in dispute of the basic facts underlying the claimed obligation would have arisen, nothing contrary thereto appearing in either the writ or Act nor any disclosure therein that the city was even cognizant of the claim's existence at the time of the enactment, much less aware of its presentation to the legislature. Indeed, an inference, drawn from the writ and the Act upon which it is posited, of such a controversy would not be unreasonable, it not being inconsistent with the position taken by the petitioner before this court and the truth of any logically necessary antecedent or premise thereof not being questioned by him. Hence the tortious claim is deemed to have been a disputed one at the time of the passage of Act 46 and a controversy to have then existed for the purpose of determining whether the adjudication of it by the legislature in fixing the amount of liability due the petitioner is a rightful subject of legislation and not an invalid exercise of the judicial power.

It is settled by all the authorities that where the facts out of which either a legal or moral obligation is claimed to arise are disputed the settlement of the contention is not a rightful subject of legislation but falls within the province of the courts under constitutional distribution of governmental powers. (*Harris* v. *Co. Com'rs Allegany Co.*, 130 Md. 488, 100 Atl. 733, L. R. A. 1917 E 824; *Queen Anne's Co.* v. *Talbot Co.*, 108 Md. 188, 69 Atl. 801; *State of Nevada* v. *Hampton*, 13 Nev. 439; *Board of Education* v. *State*, 51 Ohio St. 531, 38 N. E. 614; *Baldwin* v. *New York*, 42 Barb. [N. Y.] 549 [*aff'd* 45 Barb. (N.Y.) 359]; *State* v. *Tappan*, 29 Wis. 664, 9 Am. R. 622.) Consonant therewith it is stated in 1 Cooley's Constitutional Limitations (8th ed.) at page 498: "And there is much good reason for assenting also to what several respectable authorities have held, that where a demand is asserted against a

municipality, though of a nature that the legislature would have a right to require it to incur and discharge, yet if its legal and equitable obligation is disputed, the corporation has the right to have the dispute settled by the courts, and cannot be bound by a legislative allowance of the claim." In the footnote thereof, it is further stated: "It is one thing to determine that the nature of a claim is such as to make it proper to satisfy it by taxation, and another to adjudge how much is justly due upon it. The one is the exercise of legislative power, the other of judicial." This does not mean that it is not within the province of the legislature to recognize the moral nature of an obligation of the state or municipality and to direct the payment either in whole or in part of any such obligation or debt, whether legal or moral, when liquidated and founded on admitted facts. Nor does it signify that it is for the courts to sit in review of the legislative discretion, determine fairly debatable questions as to the reasonableness, wisdom and propriety of such legislative action or substitute their judgment for that of the legislature, such matters being for the legislative body upon which rest the duty and responsibility of decision. It does mean, however, that the legislature has no constitutional power to fix the amount of liability due from a municipality to a private individual upon his tortious claim for unliquidated damages where at the time the facts are disputed out of which is claimed the municipal obligation arose and none to adjudicate the controversy thereof, the test being that questions of law and fact are necessarily raised which the courts only have the constitutional power to determine. It follows therefrom that the territorial legislature, by clearly and unmistakably determining such questions in its enactment of Act 46, invaded to that extent the sphere of action where the judicial branch of the Territory is supreme.

The petitioner contends that the Act does not encroach upon the judicial power of the government but in our opinion none of the authorities cited by him support his contention. In oral argument he urges that the cases of *Levy Leasing Co.* v. *Siegel*, 258 U. S. 242, 66 L. ed. 595, *Radice* v. *New York*, 264 U. S. 292, 68 L. ed. 690, and *Standard Oil Co.* v. *Marysville*, 279 U. S. 582, 73 L. ed. 856, oppose the statement of law with respect to the province of the courts to determine the contention relative to disputed facts upon which is founded a claim to a legal or moral obligation. However, those cases do not involve such a contention nor pertain to the matter of legislative invasion of the judicial power but deal exclusively with legislative actions within the scope of the police power. The cases upon which the petitioner principally relies in his briefs are *In re Mott-Smith*, 29 Haw. 343, *United States* v. *Realty Company*, 163 U. S. 427, 41 L. ed. 215, *Pope* v. *United States*, 323 U. S. 1, 89 L. ed. 3, and *Guthrie National Bank* v. *Guthrie*, 173 U. S. 528, 43 L. ed. 796. Although these authorities hold that it is within legislative power to recognize a moral obligation of a state or municipality and provide for its payment, not one of them holds that the legislature itself has the authority or power to settle a claim to a moral obligation arising out of disputed facts by adjudicating the contention, adjudging the state or municipality liable, fixing the amount of liability and directing it to be paid. The constitutional question of legislative trespass on the judicial power was not raised and not considered in the case of *In re Mott-Smith* nor does it appear therein that the facts, out of which the claim to a moral obligation arose, were disputed. In the case of *United States* v. *Realty Company* the Supreme Court of the United States passed on an Act of Congress directing payment of claims to a moral obligation, the underlying facts of which as well as the amounts thereof were not disputed. In that of *Pope* v. *United States* the Court up-

held an Act of Congress which provided for the payment of a moral obligation upon judicial determination by a court of law of the liability of the government in the amount fixed by the court, the Act conferring jurisdiction upon the Court of Claims to hear, determine and render judgment thereon. In answering the question whether the Act of Congress invaded the judicial province of the Court of Claims, the Court said: " * * * it is important that the Act contemplated that petitioner should bring suit on his claims in the usual manner, that the court was given jurisdiction to decide it, and the petitioner by bringing suit has invoked, for its decision, whatever judicial power the court possesses." Likewise the Court in *Guthrie National Bank* v. *Guthrie* approved of an Act of a territory which created a special tribunal for hearing and deciding upon claims to a moral obligation and provided for the payment of those claims found to be proper by the lower court. None of these authorities nor any of the others cited by the petitioner hold contrary to the principles enunciated in this opinion and this court has been unable to find any that do.

Therefore, the legislature having transcended its authority and power in passing Act 46, the Act must be held to be invalid, inoperative and void.

The order quashing the alternative writ is affirmed.

*C. B. Dwight* (also on briefs) for petitioner-plaintiff in error.

*R. A. Vitousek* (*Jean V. Gilbert*, City and County Attorney, also on the brief) for respondent-defendant in error City and County of Honolulu.

---

CIRCUIT JUDGE CASSIDY DISSENTING.

The Court states that the paramount question on this

426

appeal is whether or not, by the enactment of Act 46 S. L. H. 1945 the legislature has encroached upon or projected itself into the domain of the judiciary in contravention of the accepted American doctrine respecting the separation of the executive, legislative and judicial branches of the government. The prevailing opinion holds that a legislature has "no authority or power to pass judgment upon disputed facts underlying an unliquidated obligation of a state or municipality to which a claim for damages is directed and none to enter a legislative adjudication of the controversy therein"; but, that its power to require the payment of any governmental obligation or debt, whether legal or moral, is limited to a claim where the obligation is "liquidated and founded on admitted facts." And, deeming this claim to rest on disputed facts, answers the paramount question in the affirmative by holding Act 46 to be invalid as an unauthorized exercise of judicial power by the legislature. With all deference, I am compelled to register a dissent.

Whatever the opportunity and however the inclination to brand the act as imprudent, the responsibility therefor is the legislature's alone. *State* v *Thomason*, 142 Tenn. 527, 221 S.W. 491. And, the conscience of the legislature is not to be measured by that of the court. *State* v *Gibson*, 26 Ohio Cir. Ct. 784. So that, susceptible as it may be to criticism from the standpoint of wisdom or policy, the validity of Act 46 should be tested by the same gauge applied to any other legislation under attack. It is not the proper duty of the court to condemn but, rather, to uphold the enactment if such a course is reasonably open. *Bowker* v *Baker*, — Cal. —, 167 Pac. 2d. 256; *Robertson* v *Pratt*, 13 Haw. 590, 613.

It plainly appears from Act 46, read in conjunction with the allegations of the alternate writ for mandamus, that, incident to the execution of a contract for a pumping

station in and for the City and County of Honolulu, the petitioner suffered a loss of equipment, exceeding six thousand dollars in value (the amount allowed by the Act), either through direct conversion by a City and County agency or by the agency's negligently permitting the equipment to be lost or stolen. Since the motion to quash interposed against the alternative writ is to be taken as admitting the allegations thereof (35 Am. Jur., Sec. 363, pp 104-5), it should follow, that so far as this appeal is concerned, the obligation covered by Act 46 must be deemed to rest on undisputed facts. And that the facts so admitted constitute a moral obligation for which the legislature may provide relief seems too clear to necessitate more than mere reference to a few of the decisions defining the nature of a moral obligation. See *United States* v *Realty Company*, 163 U. S. 427, 440; *Dept. of Finance* v *Dishman*, 298 Ky. 545, 183 S.W. 2d 540, 544; *State* v *Carter*, 30 Wyo. 22, 215 Pac. 477; *In re Mott-Smith*, 29 Haw. 343, 348-9.

However, assuming to be true that which cannot be conceded, namely, that it is permissible to go beyond the record to infer that the claim rested on disputed facts, I am nevertheless of the opinion that, at this stage of the proceedings at least, it should be held that the legislative relief granted by Act 46 was within that department's prerogative; and, that ultimately, the act can be subjected to judicial scrutiny only to the extent and for the limited purpose of determining whether or not there might be found, from all the facts and circumstances, a sufficient basis to have permitted the legislature to rationalize that a moral obligation, as judicially defined, existed in respect to the claim.

The reports almost monotonously reiterate certain pertinent fundamentals governing the interaction of the judi-

cial and legislative branches of the government. The following are characteristic:

"Judicial inquiry does not concern itself with the accuracy of the legislative finding, but only with the question whether it so lacks any reasonable basis as to be arbitrary." *Bordan's Co.* v. *Ten Eyck*, 297 U. S. 251, 263.

"Being a legislative judgment it is presumed to be supported by facts known to the legislature unless facts judicially known or proved preclude that possibility. Hence, in reviewing the present determination we examine the record, not to see whether the findings of the court below are supported by evidence, but to ascertain upon the whole record whether it is possible to say that the legislative choice is without rational basis." *S. C. Hwy. Dept.* vs *Barnwell Bros.*, 303 U. S. 177, 191-2.

"Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the legislature; and if the question of what the facts established be a fairly debatable one, it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker." *Radice* v *New York*, 264 U.S. 292, 294.

(Also, *Levy Leasing Co.* v *Siegel*, 258 U.S. 242, 246; *Standard Oil Co.* v *Marysville*, 279 U.S. 582, 586; *Clark* v *Paul Gray, Inc.*, 306 U.S. 583, 594).

In effect it is said by the majority that these principles have no cogency to our inquiry—that they may be resorted to in testing the validity of legislation in other fields, such as enactments within the scope of the police power, but are to be disregarded in considering an act involving a contention relative to disputed facts upon which is founded a claim to a legal or moral obligation.

Admittedly, none of the cases quoted from or cited involved such a contention. However, the principles an-

nounced in them appear not to be aimed at any particular type of legislation but are broadly laid down to regulate generally the scope of permitted action by the legislature and the corresponding restriction of the court's authority, whenever a contention arises in respect to any enactment based on legislative inquiry and determination of controversial facts. To my mind, any other interpretation does not stand to reason, as it hardly seems logical to recognize the legislature's right to a free rein in determining factual contests respecting enactments pertaining to the exercise of its police power, where property and personal rights of the whole populace may be, and often are, so seriously affected, and yet require that when it undertakes to provide for the payment of an obligation of the government resting on moral considerations it must refrain from further consideration of the claim the moment a disputant appears and offers any factual data in opposition to that upon which the bill for relief has been presented. That the suggested distinction is not well taken is directly reflected by the language of the court in *Williamsburgh Sav. Bank* v *State*, 243 N.Y. 231, 153 N.E. 58, 61: "The decision by the Legislature that such an obligation (a moral one) exists upon given facts is subject to review just as much as its decision that the facts before it warrant the exercise of the police power by laws which would otherwise be unconstitutional."

Finally, the point does not exactly appear to be one of first impression in this jurisdiction. Clear recognition that these general principles extend to private acts providing for the payment of the government's moral obligations appears from In re Mott-Smith, Supra, (which also involved a contest over the legislature's authority to grant relief to a contractor on a moral basis). In that case it was said: "All presumptions are in favor of constitutionality and validity. In cases of doubt, the doubts must

be resolved in favor of constitutionality and validity. So, also, if the power exercised in the enactment of a law depends for its validity upon the existence of facts and circumstances, the presumption is that the necessary facts and circumstances did exist, until the contrary is clearly shown. With reference to all of these presumptions, favorable to constitutionality and validity, the burden is upon the person attacking the constitutionality of the law to show that the enactment cannot be supported as the exercise of any of the powers vested in the legislature or by the existing facts and circumstances." (p. 346).

There is nothing in this record to offset the presumption of legislative regularity provided for by the above rules. Accordingly, I am of the opinion that their proper application, in and of itself, requires Act 46 to be upheld, even if it can be deemed to rest on disputed facts.

Another approach to the problem from a slightly different angle produces the same result.

No one can dispute that the cardinal tenent respecting the separation of powers requires that the independence of the judicial branch of the government in the exercise of its exclusive powers must be kept inviolate from invasion by the legislative branch. Yet, practicality in government requires, and legitimately so, that the theoretical concept be not too rigidly applied. *Union Bridge Co.* v *United States,* 204 U.S. 364, 387. Of necessity, there must be some overlapping and interplay of functions. *Udall* v *Severn*, 52 Ariz. 65, 79 Pac. 2d 347, 350. Eminent constitutional authorities have recognized this.

The conception was epitomized by Justice Holmes in one of his dissents as follows: "It does not seem to need argument to show that however we may disguise it by veiling words we do not and cannot carry out the distinction between legislative and executive actions with mathematical precision and divide the branches into watertight com-

partments, were it ever so desirable to do so, which I am far from believing that it is, or that the constitution requires." *Springer* v *Philippine Islands*, 277 U.S. 189, 211.

Willoughby, expanding on the general principle, says: "Thus, it is not a correct statement of the principle of the separation of powers to say that it prohibits absolutely the performance by one department of acts which, by their essential nature, belong to another. Rather, the correct statement is that a department may constitutionally exercise any power, whatever its essential nature, which has by the Constitution, been delegated to it, but that it may not exercise powers not so constitutionally granted, which, from their essential nature, do not fall within its division of governmental functions, unless such powers are properly incidental to the performance by it of its own appropriate functions." Willoughby Constitutional Law, Sec. 725 p. 682.

Story, much earlier, declared: "But when we speak of a separation of the three great departments of government, and maintain that that separation is indispensable to public liberty, we are to understand this maxim in a limited sense. It is not meant to affirm that they must be kept wholly and entirely separate and distinct, and have no common link of connection or dependence, the one upon the other, in the slighest degree. The true meaning is, that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free constitution." 1 Story Constitution of the United States (4th Ed.) Sec. 525 p. 380.

Under constitutional government the control of the purse strings of government is a legislative function. *Colbert* v *State*, 86 Miss. 769, 39 So. 65, 66; *State* v *Thomason*, supra, 494. By reason thereof, the legislature, and

432

it alone, possesses the power to grant relief for claims binding only as moral obligations. The courts are devoid of any power in that respect. *North Pacific Grain Growers* v *United States*, 90 Ct. Cls. 189, 202; *Love* v *Lincoln County*, 166 Miss. 1, 147 So. 877, 878.

Upon application of these principles it follows that since the legislature has exclusive control over the allowance of governmental moral obligations, in order to effectually carry out this primary power it may, without unconstitutionally offending the judicial prerogative, incidentally consider and adjudge, to its own satisfaction, all conflicting facts and contentions underlying the claim, although the exercise of this incidental function may, in its essential nature, be more properly analyzed as a judicial process.

Specific approval of this conclusion is found in 1 Sutherland Statutory Construction (3rd. Ed.) Sec. 217, p. 34, by the following: "Private bill legislation is common, both in England and in the state and federal courts. The procedures for proof of claim vary greatly from state to state and while the accuracy of some may certainly be questioned, basically the inquiry is essentially judicial. Witnesses are frequently examined, testimony is taken under oath, and the committee makes a finding and recommendation which is incorporated in a private bill.

"The procedure resembles the judicial process far more than the legislative and yet there has been little question but what this is an appropriate legislative power . . . More realistically it must be admitted that the exercise of the power exists as an exception to the classical doctrine of the separation of powers."

See also 16 C. J. S. Sec. 105, p. 293 and Crawford Statutory Construction, Sec. 10, p. 12.

Most of the authorities take the existence of this power in the legislature to settle disputed facts so much for

granted that it is difficult to find among the multitude of cases involving the validity of enactments on governmental moral obligations many that even discuss the subject.

A fully reasoned precedent is afforded, however, by *Guthrie National Bank* v. *Guthrie*, 173 U.S. 528.

In that case, an act of the Oklahoma territorial legislature provided for the determination, by a commission, of claims for goods, monies or labor furnished by settlers to establish and maintain four provisional municipalities which were later incorporated into the City of Guthrie. The commission was required to report its findings on each claim, allowed or disallowed, to the district judge for his approval or disapproval, and he, in turn, certified those he allowed as a charge against the city. From the facts reported, it is clear that the particular claim under consideration was disputed and further, that the act contemplated that claims resting on disputed facts should be entertained and determined. This also appears from the recital of the opinion: "If any claims were without merit or fraudulent, there was opportunity to show such fact before the commission and also before the district judge . . ." (p. 538).

That the district court was not performing in a true judicial capacity appears not only from a consideration of the limited functions delegated to it by the act, but also from the comment of the court: "The proceeding under it (the act) is not in the nature of a suit . . ." (p. 537). That the validity of the act did not depend upon a judicial determination of the claims, further appears by the court's reply to the contention urged that the act afforded the district court no opportunity to make any investigation for itself: "We do not see that this is material even if true." (p. 538). Against this background, it seems to me that the Supreme Court's statement: "The legislature might have decided the facts for itself, but instead of that

434

it appointed this tribunal" (p. 537), is direct authority for the proposition that the legislature may properly pass legislation for a governmental moral obligation even though it is founded on disputed facts.

If what has been said heretofore is sound, then it is only axiomatic that by the application of the same principles and by indulging in the same presumptions that support the legislature's general power to decide disputed facts underlying a moral obligation, it must be held the legislature likewise has the authority in respect to any such claim to determine and fix the amount of compensation to be allowed by it, even though the claim is unliquidated.

Here, too, the power of the legislature apparently has been deemed too obvious to be questioned, so that, except for the few cases cited in the majority opinion, which will be discussed hereunder, there is a paucity of direct holdings on the point. There are, however, innumerable cases in which the legislature's power in that respect has been impliedly approved. The *Guthrie National Bank* v. *Guthrie, supra,* is one. In this jurisdiction are *In re Mott-Smith, supra,* and *In re Saludis,* 34 Haw. 79. From other jurisdictions the following are typical: *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264; *Udall* v. *State Loan Board,* 35 Ariz. 1, 273 Pac. 721; *Mayor* v. *Wolcott,* 12 Del. Chan. Rep. 379, 112 Atl. 703; *Wyoming* v. *Carter,* 30 Wyo. 22, 215 Pac. 477; *Board* v. *Puckett,* 227 Ala. 374, 149 So. 850; *John E. Ballenger Const. Co.* v. *State Board,* 234 Ala. 377, 175 So. 387; *Spitzig* v. *State,* 119 Ohio St. 117, 162 N. E. 394.

The last case cited indicates that the disposition of the point rests in the application of the same principles applicable to a legislature's power to determine and decide controversial facts generally. The opinion in the case reciting at page 395: "One very important feature

of this case should be kept in mind, and that is, that the legislature found that the injury to Spitzig imposed a moral obligation in favor of Spitzig upon the state, the payment of which should be made through the county commissioners. The legislature, it must be presumed, took the necessary steps to advise itself about the facts incident to the solicited legislation, and determined, as it determines the merits of any legislation submitted for its consideration, that any amount that was paid to Spitzig, not exceeding $15,000 would not more than compensate him for the injuries received, and therefore it authorized the county commissioners to settle the amount with Spitzig by agreement between them, limiting the maximum payment to $15,000. The claim having been settled for $12,500, the action of the legislature stands as a finding by the legislature that that sum represents only compensation, and is in no sense a gratuity extended by the county to Spitzig."

Cited as authority for a contrary view are *Harris v. Com'rs. Allegany County*, 130 Md. 488, 100 Atl. 733; *Com'rs. Queen Anne's County v. Com'rs. Talbot County*, 108 Md. 188, 69 Atl. 801; *State of Nevada v. Hampton*, 13 Nev. 439; *Board of Education v. State*, 51 Ohio St. 531, 38 N.E. 614 and 1 Cooley's Constitutional Limitations (8th ed.), p. 498.

These cases unquestionably hold with the majority of this court that a legislature is not permitted to enact for a moral obligation based on disputed facts nor is it allowed to determine and fix the amount of an unliquidated claim against a municipality. As such complete reliance has been placed on the authenticity and applicability of these authorities it is in order to briefly review the cases to determine, if possible, any plausible explanation for their complete disregard of the basic principles above discussed.

The oldest, *Nevada v. Hampton*, decided in 1878, held

in point-blank manner that a state could not require a municipality against its will to pay an individual a definitely fixed sum for a moral obligation where the underlying facts of the claim were disputed. The holding was premised on the theory that the issue presented involved only private interests— that the problem before the court was exactly the same as if it had been confronted with an act determining a debt between private individuals. The Nevada court accepted as determinative the quoted view of Judge Cooley in his "Constitutional Limitations" to the effect that in a case of this sort where the municipality disputes its obligation it "has the right to have the dispute settled by the courts, and cannot be bound by a legislative allowance of the claim", and that, "it is one thing to determine that the nature of a claim is such as to make it proper to satisfy it by taxation, and another to adjudge how much is justly due upon it. The one is the exercise of legislative power, the other of judicial."

The Queen Anne's County case also held that the legislature invaded the judicial field when it attempted to require a county to contribute a definite sum towards the construction of a bridge. This case cites the Nevada case and is likewise reasoned on the basis that only private rights were involved. (The Maryland court deemed appropriate and controlling its own precedent invalidating a provision of a legislative divorce requiring the husband to pay three hundred dollars annual alimony).

In *Harris* v. *Com'rs Allegany Company*, the court merely adhered to the precedent provided by the *Queen Anne* case and invalidated, as the exercise of judicial power, an act directing the county to pay a moral obligation based on disputed facts.

At the time these decisions were rendered, the law respecting the extent of a legislature's power to control its municipalities was not so settled as it is today. It was

generally conceded that a state legislature had complete control over a municipality's public functions, but there were some jurisdictions, including Nevada and Maryland, which followed the doctrine sanctioned by Judge Cooley and held that municipalities possessed inherent autonomy in respect to their local affairs. But this view has become strictly a minority one. Today it can safely be said that the overwhelming weight of authority is for the proposition that in the absence of specific constitutional limitations a legislature's control of municipalities is as absolute in respect to local affairs as it is with governmental functions. *Guilford* v. *Supervisors*, 13 N. Y. 143 (said in *In re Heineman's Will*, 201 Wis. 484, 230 N.W. 698, 701, to be apparently the first decision asserting the power of the legislature to compel its municipalities to recognize their moral obligations); *Opinion of Justices*, 298 Mass. 430, 11 N.E. (2d) 591; *Jersey City* v. *Martin*, 126 N.J. 353, 19 A. (2d) 40; *State* v. *Board of Comrs.*, 25 N.M. 338, 182 Pac. 865, *Bayley* v. *Inhabitants Town of Wells*, 133 Me. 141, 174 Atl. 459; *Trenton* v. *New Jersey*, 262 U.S. 182.

Certainly, the majority view became the established law in this jurisdiction by *McKenzie* v. *Wilson*, 31 Haw. 216, wherein this court expressly repudiated Judge Cooley's doctrine of inherent municipal rights as expounded by him in *People* v. *Hurlbut*, 24 Mich. 44, and reflected in the above referred to quotations from his "Constitutional Limitations." It was held that a municipality in the Territory is merely an agency of the legislature and possesses no powers or property that may not be modified or taken away by the legislature.

Remembering that *Harris* v. *Comrs.*, *Queen Anne's County* v. *Com'rs.* and *State* v. *Hampton* hold it to be an invasion of the judicial province for a legislature to allow a claim against a municipality for a moral obligation resting on disputed facts only on the premise that a munici-

438

pality is immune from legislative interference in respect to its local or private affairs, it follows then that the holding in *McKenzie* v. *Wilson* has completely divested the Nevada and Maryland cases of any and all authoritative force in this jurisdiction.

I think the Ohio case, *Board of Education* v. *State*, should have been cited by the petitioner rather than the respondent.

As I interpret the case, it correctly holds that where a claim for a moral obligation against a municipality is based on disputed facts the legislative finding is not conclusive but that any contention in respect thereto may be ultimately decided by the court. But the case is not authority for the proposition that a legislature may not entertain or determine such a claim. On the other hand it holds quite the opposite, as clearly appears from the opinion at page 617: "We think, however, that, whenever a contention arises between an individual and some public body respecting the existence of a claim against the latter, the controversy falls within the province of the judiciary. We do not deny the power of the general assembly to inquire into the merits of any claim sought to be asserted through its agency, before granting relief to the claimant by legislative action. Not only has it such authority, but its exercise should be carefully and rigidly observed. Such investigation, subsequent determination, and resulting action, however, do not estop the parties from appealing to those judicial tribunals of the country, that have been established under our constitution, . . ." And, from the syllabus (which in Ohio represents, or did then represent, the determinations of the court, *New York Life Ins. Co.* v. *Board of Com'rs.*, 106 Fed. 123, 131) : "In such case, if the board of education disputes the facts asserted by the claimant as the foundation of his claim, the general assembly, while it may make inquiries to ascer-

tain, in the first instance, the truth of the facts so asserted, yet it is without authority to conclusively find, and recite in the act providing relief, the facts in dispute, so as to estop the board of education from contesting them in a court of justice where the act is sought to be enforced." Which is no more and no less than this dissent maintains the law to be.

One further authority referred to in the majority opinion needs consideration. It is *Pope* v. *United States*, 323 U.S. 1, from which is quoted: ". . . it is important that the Act contemplated that petitioner should bring suit on his claims in the usual manner, that the court was given jurisdiction to decide it, and the petitioner by bringing suit had invoked, for its decision, whatever judicial power the court possesses."

Thus isolated, the quotation might by innuendo seem to have a bearing on our issue. However, when it is taken against its proper background the notion is, I believe, quickly dispelled.

In the *Pope* case, the Court of Claims had refused to entertain jurisdiction under a congressional act requiring it to compute, not with a free judicial rein but according to legislatively prescribed limitations, the amount due a contractor for extra work under circumstances found by the Congress to constitute the basis for a moral obligation. (*Pope* v. *United States*, 100 Ct. Cl. 375). In reversing this ruling, the Supreme Court made the above quoted statement in answer to its question positing the issue as follows: "Congress having exercised its constitutional authority to impose on the Government a legally binding obligation, the decisive question is whether it invaded the judicial province of the Court of Claims by directing it to determine the extent of the obligation, by reference as directed, to the specified facts, and to give judgment for that amount." (p. 10).

It should be apparent from the foregoing that the problem in the *Pope* case was quite different from that confronting us—there it was to be decided, not whether a court was required to determine and fix the amount to be allowed as compensation for a moral obligation in order to give validity to an act providing for such relief, but rather whether a court constitutionally could be required to take any part in such a computation. If the case is of any value it would seem to be in the implication to be derived from the opinion that except for the legislative grant of special jurisdiction the Court of Claims would have been utterly without authority to compute the allowance since that function rested in the province of Congress as an incident to its exclusive power over the recognition and determination of governmental moral obligations.

Apparently deeming the claim herein a legal one, the majority points out that although authorized to do so by Section 6646, R.L.H. 1945, the petitioner never brought such a suit on his claim, nor did he attempt to secure from the legislature a waiver of any defenses that the City and County might have to a suit.

It is difficult to comprehend just what particular significance this aspect of the case provides. So also, with the observation that the availability of defenses to the legal claim might not *ipso facto* change it into a moral one.

Whether resting on a legal or moral basis, the legislature possesses full authority to compel a municipality to pay any obligation it has refused or neglected to meet. "Beyond question, the legislature may compel a county to pay a legal obligation." *New York Life Ins. Co. v. Board of Com'rs., supra*, p. 133.

Nor is it a condition precedent to legislative recognition of a claim that possible defenses to it be first judicially tested. *State v. Clausen*, 108 Wash. 133, 183 Pac. 115, 116;

*State* v. *State Highway Comm.*, 82 Mont. 382, 267 Pac. 499, 502; *In re Saludis, supra.*

In accordance with the foregoing it is my opinion that on the record before us Act 46 should be declared valid.

The remaining questions raised by the appeal can well be left for more intensive consideration by a complete court when and if they ever recur. Herein it should be sufficient to merely indicate briefly my conclusions in respect to them.

Reference to *De Mello* v. *Board of Water Supply*, 33 Haw. 285, reveals that this petitioner unsuccessfully sued the City and County of Honolulu and the Honolulu Board of Water Supply (successor to the Honolulu Sewer and Water Commission) for thirty-seven thousand, five hundred seventy-seven dollars, representing goods and materials alleged to have been furnished under the contract mentioned in Act 46.

One of the grounds upon which the lower court sustained the motion to quash the writ was that the judgment in *De Mello* v. *Board of Water Supply* was *res judicata* to petitioner's claim under Act 46.

The parties herein present conflicting contentions as to whether or not the claim so sued on included the equipment covered by Act 46. However, there is no necessity of deciding the conflict, since, even if it be assumed that the subject matter of the two suits were identical, the legislature could not be precluded by the prior judgment from recognizing the same claim as a moral obligation. The doctrine of *res judicata* has no application to the situation here presented. *Pope* v. *United States*, 323 U.S. 1; *Kennedy* v. *Meyer*, 259 Pa. 306, 103 Atl. 44; *Goldstein* v. *State*, 22 N.Y.S. (2d) 767; *Dept. of Finance* v. *Dishman, supra.*

As a final grounds for quashing the alternate writ the lower court held it was defective by reason of its failure

to set forth that an appropriation had been made to cover the payment of the six thousand dollars allowed by Act 46.

In support of the ruling, appellee refers to several of the general statutory provisions regulating municipal expenditures, particularly Section 6593 R.L.H. 1945, which in pertinent part provides that: "No money shall be drawn from the treasury of the City and County, nor shall any obligation for the expenditure of any money be incurred except in pursuance of appropriations or transfers made in accordance with law."

In my opinion, that section and the others of similar import cited by appellee are legislatively prescribed safeguards to regulate and restrict the City and County and its officials when undertaking expenditures on their own volition, but have no application to a situation where, as here, the obligation has been mandatorily thrust upon the City and County and there remains no discretion in its officials in respect thereto.

The remaining point presented in the briefs and on argument is by appellee's contention that the order granting the motion to quash should be sustained for the reason that the alternate writ fails to set forth that there were any funds available to meet the claim. This point appears not to have been raised below and should therefore not be considered on appeal. *Ching Hon Yet* v. *See Sang Co.*, 24 Haw. 731, 741; *Territory* v. *Van Dalden*, 33 Haw. 113, 132.

The order sustaining the motion to quash the alternate writ of mandamus should be reversed and the cause remanded for further proceedings.